IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF DELAWARE

RAFAEL X. ZAHRALDDIN and        )
SHELLEY A. KINSELLA,            )
                                )
            Plaintiffs,          )
                                )   C.A. No. 22-cv-00412-CFC
    v.                          )
                                )
ELLIOTT GREENLEAF, P.C.,        )
                                )
            Defendant.          )
                                )



                        Tuesday, September 16, 2025
                              1:30 p.m.
                          Motion Hearing



                         844 King Street
                       Wilmington, Delaware



    BEFORE: THE HONORABLE COLM F. CONNOLLY
    United States District Court Judge



    APPEARANCES:


                BAYARD, P.A.
                BY:   PETER LADIG, ESQ.
                BY:   RONALD P. GOLDEN III, ESQ.


                        Counsel for the Plaintiffs

APPEARANCES CONTINUED:

ELLIOTT GREENLEAF
BY:  MARK SCHWEMLER, ESQ.
BY:  DEIRDRE M. RICHARDS, ESQ.
BY:  COLIN O'BOYLE, ESQ.
                    Counsel for the Defendant


_ _ _ _ _ _ _ _ _ _


P R O C E E D I N G S


     (Proceedings commenced in the courtroom beginning at 1:30 p.m.)

          THE COURT:  Good afternoon.  Please be seated.

          Okay.  Let's start.  I guess, first, we have Mr. Ladig and Mr. Golden, I guess.

          MR. GOLDEN:  Yes.  Good afternoon, Your Honor.

          MR. LADIG:  Good afternoon, Your Honor.

          THE COURT:  All right.  And then we have, who do we have for Elliott Greenleaf?  Who's going to be the main speaker here?

          MS. RICHARDS:  Good afternoon, Your Honor. Deirdre Richards.  To my right is Mark Schwemler, who will be speaking, for the most part, today.  And this is Colin O'Boyle.  They're both admitted pro hac vice.

          THE COURT:  Okay.  Great.  Thank you very much.

All right.  Plaintiffs, so you've got to just explain to me how you write a letter, attach it to your complaint in which you're demanding $122,000, and now you're insisting that we don't have diversity jurisdiction because the amount in controversy is not $75,000.

I have a really hard time understanding that, so you just need to address that.

**MR. LADIG:**  Would you like, Your Honor, to hear the evidence, or do you want me to just address the issue and sort of as a preview of what my clients would testify to?

I just want to make sure I'm being responsive to what you want.

**THE COURT:**  Well, I guess, I mean, frankly, that's why I intentionally said in my order you should be prepared to testify and Mr. Golden should be prepared to testify, because I'm, first, trying to get my arms around how a lawyer could represent that.

Now, it's very apparent to me, I mean, both sides didn't even cite the right legal authority.  So maybe you just don't understand federal law?

But I'm just having a really hard time as a lawyer how you make that argument.  You know that your client made a demand for $122,000 in an incredibly litigious matter, and yet you're telling me that, no,

we're not going to go above $75,000.  I'm just having a hard time.

So you may want to start as a lawyer, if you want.  You don't have to be under oath right now, but if you want to just tell me as a lawyer how you make that argument.

**MR. LADIG:**  Yeah.  Sure.

So the argument is based on the fact that at the time that the lawsuit was going on, the PA action, my clients were employees of Armstrong Teasdale.  Armstrong Teasdale entered into an agreement with them where they said they would pay, initially, up to $100,000 worth of their fees incurred in defense of the action in Pennsylvania.  That amount was later increased to $175,000.

At the time that the January 11 letter was sent, they had an estimate from Horn Williamson, which was the counsel that was representing them in the Pennsylvania action, but they had not exhausted, yet, the amount that Armstrong Teasdale was going to pay on their behalf.

So on February 2, Armstrong Teasdale informed the plaintiffs that they were going to pay the then-existing amounts that were subject to a, I believe, a December 21 invoice, and partial -- make partial payment of a January 22 invoice.

And then after that point, the defendants -- or the plaintiffs here would be on their own.  And at that point, there was $15,000 in excess that had not been paid by Armstrong Teasdale that was still owed by my clients, and the rest of the defendants to Horn Williamson for the defense of the PA action.

And that's a relevant thing because they cannot get -- they could not get advancement from both, right?  Or they could not seek advancement from Elliott Greenleaf for amounts that Armstrong Teasdale had already paid on their behalf without potentially creating an issue or a claim between Armstrong Teasdale and Elliott Greenleaf.  Which Armstrong Teasdale said, "We don't want you to do that.  Do not seek these amounts."  And so they did not.

And so by the time the March 25th letter was sent, the only outstanding amounts were $48,000, because Armstrong Teasdale had paid everything else.  And so the only amounts that they sought in advancement were the $48,000 that were then outstanding.

THE COURT:  Okay.  And this litigation is ongoing, correct?

MR. LADIG:  Correct.

THE COURT:  Right.  You're continuing to...

MR. LADIG:  Clients are continuing to incur fees, yes.

**THE COURT:** Incur fees. And you're asking for a declaration that they're entitled to an advancement for any future attorney fees, and this was as of the date you filed this complaint in 2022?

**MR. LADIG:** Correct.

**THE COURT:** Right. And so you are telling me that, just assuming for argument's sake, that as of the date they filed the complaint, they felt they were entitled... they believed they were entitled, as a legal matter, to 40-some-thousand dollars?

**MR. LADIG:** Correct.

**THE COURT:** That's back in March of 2022.

**MR. LADIG:** Correct.

**THE COURT:** And you're telling me that I shouldn't expect that there's 30,000 or more dollars that they're going to incur in legal fees, or that they have incurred since March of 2022? You're saying, no, that wouldn't happen, that this is really capped out at $45,000?

**MR. LADIG:** No. What I'm saying is it's -- because we don't know what it is -- we don't know how many additional fees are going to be incurred at that time. The case could have settled. The case could have been -- the case could have resolved in some fashion.

**THE COURT:** I'm going to guess they've paid or

they've incurred more than $30,000 in attorneys' fees since March of 2022.

**MR. LADIG:** Yes.

**THE COURT:** So how are you coming up with a straight face and saying that this amount in controversy is less than $75,000?

**MR. LADIG:** Because as of the date that we filed the case.

**THE COURT:** When you asked for future costs and future fees, and when you had already incurred 122, and when they've asserted that this is worth more than $75,000?

I'll tell you what, put on your evidence. Put on your evidence. I'm going to look into whatever I can, whether I'm going to entertain, if it seems appropriate, a motion for sanctions. And you can litigate it. I'm not prejudging it. I would have to see the evidence. But I don't get this. It seems to me, there's a lot of gamesmanship going on.

But you can put on your evidence. And I will also say, it's the manner in which it's litigated. You don't even cite the correct legal standards. There's a Supreme Court case directly on point. You don't even cite it in your papers. We have to bring it to your attention.

Go ahead and put on your evidence to establish

that there's an amount in controversy above $75,000 that would defeat a motion for remand.

        **MR. LADIG:**  All right.

        **THE CLERK:**  Raise your hand.  Please state and spell your name for the record.

        **THE WITNESS:**  Rafael Zahralddin.  First name R-A-F-A-E-L.  Last name Z-A-H-R-A-L-D-D-I-N.

    RAFAEL ZAHRALDDIN, having been called as a witness, being first duly sworn under oath or affirmed, testified as follows:

        **THE CLERK:**  Thank you.  You may be seated.

                DIRECT EXAMINATION

**BY MR. LADIG:**

**Q.**  Good afternoon, Mr. Zahralddin.  How are you?

**A.**  I'm doing okay.

**Q.**  All right.  Can you just briefly describe your work experience?

**A.**  I graduated from Widener Law School.  I then went to Georgetown.  I spent a year as a senior writing fellow, did an LLM there.  From there, I went and was a law professor for five years at Chapman University.  Upon us receiving our ABA accreditation, I took a year leave.  I clerked for United States bankruptcy court judge, Samuel Bufford.

    Then, following the clerkship, I came here and worked

at a couple of different law firms, leading up to working for Elliott Greenleaf, where I helped to found their Wilmington office.  And I was there for about 13 years. Moved over to Armstrong Teasdale, and then I moved over to Lewis Brisbois shortly after that, which is where I currently work as a partner.

**Q.**   When did you leave Elliott Greenleaf?

**A.**   At the end of 2020, January 31st -- sorry, December 31st.  Excuse me.

**Q.**   And what happened after you left Elliott Greenleaf?

**A.**   I left Elliott Greenleaf; we were at Armstrong Teasdale.  I think about two months later, we were sued because we left the firm, left with several partners and, I think, a paralegal.  And we had a lawsuit that claims that we violated some sort of fiduciary obligation.

          **MR. LADIG:**  Your Honor, may I introduce an exhibit?

          **THE COURT:**  Sure.

**BY MR. LADIG:**

**Q.**   Mr. Zahralddin, I've provided you what has been marked as Plaintiffs' Exhibit 1.  Do you recognize this document?

**A.**   Yes.

**Q.**   Can you tell the Court what this document is?

**A.**   It was the complaint filed against myself, three of

my partners, and our paralegal.

**Q.**    And what was the gist of the complaint?

**A.**    Gist of the complaint is that because we left, we had breached our fiduciary duties, duty of loyalty.  And they also accused of converting client files and properties.

**Q.**    And when was this complaint filed?

**A.**    I believe sometime in February of '21.  I would have to double-check that signature block.  Yeah, February 5, 2021, is when this was filed, thereabouts.

**Q.**    So after this complaint was filed, you said you were at Armstrong Teasdale; is that correct?

**A.**    Yes.  We had moved on to Armstrong Teasdale.

**Q.**    Did you have any conversations with Armstrong Teasdale about how the action was going to be defended?

**A.**    Yes.  We discussed it with -- they wanted us to focus on our work, not to focus on the case.  And they felt terrible that we were being pursued for these actions, so they offered to cover, I believe it was $100,000 of our collective defense.

          **MR. LADIG:**  Your Honor, if I could just raise the agreement that Mr. Zahralddin is talking about, was produced in the Pennsylvania action.  It was marked as "Confidential" by Armstrong Teasdale.  They don't have any objection.  I spoke with their general counsel this morning.

They don't have an objection to Mr. Zahralddin testifying about it.  They said if Your Honor wants it to be part of the record, they ask that it be submitted confidentially.

**THE COURT:**  But wasn't it already, at least in relevant part, it is part of the record, right?  It's in the briefing?

**MR. LADIG:**  I think that's right.  The exhibit -- the actual document itself is not.  I don't think it's attached to anything, at least not to my knowledge.

**THE COURT:**  Hold on one second.  I thought it was part of the record.

Oh, I'm sorry.  Okay.  I'm thinking of the Greenleaf bylaws.  So what --

**MR. LADIG:**  Yeah.  So this is the actual agreement between Armstrong Teasdale and the five defendants.

**THE COURT:**  Okay.  All right.  So how do you want to proceed?  Just summarize it, but it won't have a document in?

**MR. LADIG:**  Yeah.  If that's okay with Your Honor.

**THE COURT:**  Just go ahead and ask, and let's see what they do.

**MR. SCHWEMLER:**  And which document is this?

**MR. LADIG:**  It's the first third-party payor agreement between Armstrong Teasdale and the five defendants.

**MR. SCHWEMLER:**  We don't have any objection.

**MR. LADIG:**  Okay.  Thank you.

So we will just have Mr. Zahralddin just generally summarize it and not submit it.

**THE COURT:**  That's fine.

**MR. LADIG:**  Okay.  Thank you, Your Honor.

**BY MR. LADIG:**

**Q.**  Do you have any other recollection about what the terms and conditions of those -- of the Armstrong Teasdale agreement, or at least the first one?

**A.**  No.  I mean, I think the first one's simply -- the only thing that I recollect is that it tapped out at $100,000.

**Q.**  Okay.  And at that time, when you had the discussion with Armstrong Teasdale, who was representing the defendants in the PA action?

**A.**  Horn Williamson, which is a firm that was recommended to us by Armstrong.

**Q.**  All right.  Did there come a time when you revisited the cap on the amount that Armstrong Teasdale was willing to pay on behalf of the defendants?

**A.**   Yes.  I believe we thought the preliminary objection phase was a little bit excessive.  There was litigation.  It was litigious, as the Court, I think, has noted.  And so they increased it to 175.

**Q.**   Okay.  And do you know when Armstrong Teasdale agreed to increase the cap to 175,000?

**A.**   I would have to look at the documents, but I think it was sometime in March -- no, no.  It may have been earlier than that.

**Q.**   How about November?

**A.**   You're right.  November of '21.

**Q.**   Okay.  And around that time, in November of 2021, do you know how much -- how many fees had been incurred at that point?

**A.**   Roughly speaking, I think it was 100,000.  Between 100 and 150,000, something like that.

**Q.**   Okay.  In January of 2022, you sent a letter to Elliott Greenleaf indicating that you wanted advancement for fees incurred in defense of the PA action; is that correct?

**A.**   Yes, that is correct.

          **MR. LADIG:**  Your Honor, may I --

          **THE COURT:**  Yeah, you can.  But that's part of the record already, right?

          **MR. LADIG:**  Yeah.

THE COURT:  I think what you're about to show?

MR. LADIG:  Yes.

THE COURT:  I mean, I'm content... well, go ahead.  I'm sorry.

MR. LADIG:  Okay.

THE COURT:  I'll let you just go ahead.  Go ahead.  That's fine.

MR. LADIG:  I didn't want to presume.

THE COURT:  That's fine.  Go ahead.

BY MR. LADIG:

Q.    So in January of '22, you sent this letter.

Do you recall how many fees and expenses you told Elliott Greenleaf had been incurred at that point, when you sent this January letter?

A.    I'd have to -- if I'm just doing it off of memory, 150, 140, something like that.

Q.    Okay.  Now, at that time there was still the Armstrong Teasdale agreement to pay, at least some of the fees.  Why did you indicate to Elliott Greenleaf that you had incurred $152,000 in fees?

A.    Well, because at the time Armstrong Teasdale had not made a decision as to what they wanted to do.  We had not had a discussion with them on the advancement issues.

And, obviously, while I can't claim if somebody has paid off a secondary source without creating unjust

enrichment or some other sort of issue, of which we, quite frankly, didn't want to have anymore of, certainly, they had the option to do that.  And we didn't speak.  I didn't speak to the general counsel's office, to Rick Engel until we had had advice of counsel as -- first with Eric Milby briefly, and then with Francis Pileggi, who became our counsel on that issue.

Q.   Okay.  Let's hold up there.

At the time of the January 11 letter, did you have an actual invoice from Horn Williamson?

A.   I don't remember off the top of my head.  I think we -- if we had them, they usually came a little bit late. I think we were trying to get estimates.  And we also had to go through a process of redaction before we sent over anything.  I believe that that's what my letter referenced.

Q.   Okay. And so do you have a recollection about whether you actually submitted any invoice?

A.   No.  There was no invoice attached to that.  We actually put explicitly -- I remember the language we explicitly placed into the letter said that there would be invoices forthcoming.

Q.   Okay.  So after you submit this January 11 letter, what, if anything, happened with respect to Armstrong Teasdale's agreement to continue to pay costs?

**A.**   Their agreement, I believe they increased it after that, but I have to look at the timeline.  I just don't have all this.

**Q.**   Well, in November it went to 175, right?

**A.**   Okay.

**Q.**   Okay.  Did they ever increase it beyond that?

**A.**   No.  No.  No.  It only -- there were only the -- there was only the one increase.

          **MR. LADIG:**  All right.  Your Honor, may I approach?

          **THE COURT:**  Yes.

          **MR. LADIG:**  Thank you.

          **THE WITNESS:**  Thank you.

**BY MR. LADIG:**

**Q.**   Mr. Zahralddin, I've handed you what has been marked as Plaintiffs' Exhibit 2.

     Do you recognize this document?

**A.**   I do.

**Q.**   And can you just tell the Court what it is?

**A.**   It's a series of e-mails between ourselves and Michael -- the defendants in the Pennsylvania action, Your Honor.  And Mr. Hayes was our primary lawyer at Horn Williamson.

     And the first is him talking about going over our invoices and figuring out what's left over.  And attached

to this is an e-mail that follows, between Lawrence Tucker, who acts as an associate general counsel at Armstrong Teasdale, with Thomas Weaver and Richard Engel -- and Richard Engel was the general counsel to Michael Hayes -- basically indicating that they're paying up to a certain amount, but that the cap had been expended, and that there was a balance of $8,700, roughly, that was left.  And that they were going to, you know, provide a little bit of IT support at no cost and maybe some legal research, but that that was it under the third-party payor agreement.

**Q.**   So the date on that e-mail from Mr. Tucker is February 2, correct?

**A.**   Yes.

**Q.**   Okay.  And so prior to February 2, did you know whether Armstrong Teasdale intended to continue to pay the fees and expenses incurred in defense of --

**A.**   I knew that they were no longer going to pay any more fees and expenses.

**Q.**   As of February 2?

**A.**   As of February 2.

**Q.**   Did you know before that, though?

**A.**   No.  No.  We did not have -- I mean, I'd had some discussions, I believe, independently -- I can't remember if they were right before or right after -- with

Mr. Engel.

But we didn't have anything definitive until -- and Larry Tucker had sent back that e-mail reporting -- I think Mr. Engel, obviously, had to go back to his client, to a management committee, and discuss things with him. And so that was the official -- the official word.

**Q.**   Okay.  Talked a little bit earlier about the January 11 letter that you sent requesting advancement.

What, if anything, did Elliott Greenleaf do in response to that?

**A.**   There was no response.

**Q.**   Did you revisit the advancement issue at a later date?

**A.**   With?

**Q.**   Well, just did you try to get advancement again later?

**A.**   Yes.  We did send a second letter, I believe sometime in March.

**Q.**   In connection with the preparation of that second letter, what, if anything, did Armstrong Teasdale tell you about the amounts that it had already paid on behalf of you and the other defendants for defense of the case?

**A.**   Well, after speaking to counsel on the advancement issue, I believe it was Mr. Pileggi, and after looking at the issue without waiving any sort of privilege on those

issues, we went about trying to figure out the calculation of the number because it was pertinent.

And when I spoke to Armstrong Teasdale, they had a right of contribution for the amounts they had paid.  We didn't have that right, because you're restricted.  And you can't get double recovery under Delaware law for those types of advancements.  It's a very rare thing.

So with that, we put together the demand for the, I think it was roughly 40-some-odd-thousand dollars, which was the leftover after Armstrong had paid because Armstrong was very, very clear, they did not want to get dragged into this.  This was a benefit that they'd given to us as employees, and it had limits.  But they were not going to be pursuing it.

Q.   Okay.  And do you recall about when you sent a demand for that 48,000 -- or 40,000-something dollars?

A.   I'm guessing it's sometime in early March.  I'd have to --

Q.   How about March 25th?

A.   Yeah, late -- yeah, there you go, late March.  Sorry.

Q.   Okay.  Yeah.

A.   There's been a lot going on in this case, and I try not to commit as much of it to memory.

          **MR. LADIG:**  And, Your Honor, just for the record, I'm referring to the March 25 letter from

Mr. Pileggi.

THE COURT:  Yep.

MR. LADIG:  Okay.  Thank you.

BY MR. LADIG:

Q.   So can you, then, explain, in your words, to the Court why the March 25 letter only sought $48,000 in advancement, when the January 11 letter had sought well in excess of that?

A.   Yeah.  Just to reiterate what I said before, Your Honor, we did not believe we had the right.  We believed that right was Armstrong's.  And they told us -- and we were also employed by Armstrong Teasdale at the time, at least all of us were at that point.

And they indicated they were not going to pursue that.  They did not want to get involved in the litigation.  I don't believe they entered an appearance yet in the litigation.  They certainly didn't want to fight litigation here.  And then also --

THE COURT:  When you say "they," you're talking about --

THE WITNESS:  I'm talking about Armstrong.

THE COURT:  -- Armstrong.  Okay.

THE WITNESS:  Yes, Your Honor.

They didn't want to have -- go fight two fronts; one here and an advancement claim and one over

there.

THE COURT:  Meaning, "over there," meaning a contribution claim?

THE WITNESS:  Meaning, yeah, a contribution claim in the Delaware Court and then get, somehow, pulled into the employment action in the Pennsylvania Court.

So they asked us to refrain.  And I didn't see a legal or other reason where I could pursue it without causing more litigation.

THE COURT:  Well, when you say "pursue it," you're talking about the $175,000 that had already been incurred.  In other words, the historic fees.  And that ended sometime in January of 2022.

THE WITNESS:  Yes.

THE COURT:  In other words, approximately $8,000 of the January 2022 bill, right?

THE WITNESS:  Yes.  Yes, Your Honor.

THE COURT:  So basically, the way to think about it is, the 48,000, and it's based on a March 7 invoice from Horn & Williams.  Is it Williams?  Is that the name of the --

MR. LADIG:  Horn Williamson.

THE COURT:  Williamson.  Okay.

So based on a March 7 invoice, it's what had been incurred by them as of March 7 that had not been paid

for by Armstrong Teasdale, correct?

**THE WITNESS:**  Yes, Your Honor.

**THE COURT:**  I think that's not in dispute. That's not the problem.  The problem is the complaint is not limited to historic fees.  The complaint doesn't say, I just want reimbursement for the 48 grand that was owed to me at the time we filed the complaint.

The complaint is for future fees.  It's for an advancement of the future fees, the fees that are going to be incurred in the litigation of that Pennsylvania case. That's what concerns me.

Now, if you want to address that, go ahead. Because I'm trying to figure out how you wouldn't know and wouldn't expect that those future fees would total more than something less than 30,000, you know, $35,000 or sorry, it's going to be somewhere in the neighborhood of, you know, $27,000.

So you're going to litigate this Pennsylvania case and not incur more than $27,000 in fees, right? Isn't that what this boils down to?

**MR. LADIG:**  Well, I understand your point, Your Honor.  I'm trying -- if Your Honor can just give me a second.

**THE COURT:**  Yep.

**MR. LADIG:**  I'm trying to think about whether

there are legal -- the response is a legal argument or something that Mr. Zahralddin can actually testify about.

**THE COURT:** Well, I can ask.

I mean, let me ask you, right? You're a pretty reasonable lawyer?

**THE WITNESS:** Yes, Your Honor. I try to be.

**THE COURT:** Yeah. First of all, have you incurred, since March 7 of 2022, in the litigation of the Pennsylvania case, have the legal fees exceeded $30,000?

**THE WITNESS:** Your Honor, the answer to that would be yes. And we actually almost -- we actually asked the other side to stipulate to that, which -- yes, we said we can stipulate that the fees afterwards are going to exceed that amount.

When we were doing the calculation --

**THE COURT:** Then why are you fighting the motion to remand? Rather, why are you trying to get this case remanded for lack of jurisdiction, not fighting it? You know, why are you saying that we don't have jurisdiction or --

**THE WITNESS:** Our counsel, not just Mr. Ladig, but our prior counsel, too, Mr. Pileggi, indicated to us that -- on that issue that it was as of the time that you file. And we wouldn't know what the issues were after that.

So if there's anything -- I guess it's a legal -- it's not a -- I don't think it's a factual question because I just told you all the facts I know in terms of that.

They told me, "Here's how we do the formula," when I was talking to Mr. Pileggi, and we calculated it based on that.

I can -- you can ask me any other question on the facts. I don't know if any other facts are going to change that.

THE COURT: It sounds like you might be getting bad legal advice.

THE WITNESS: Because, Your Honor --

THE COURT: You would have expected... so actually, let's go over this. So sometime in January through March 7, the legal fees exceed $40,000?

THE WITNESS: Well, I think we have some calculations on those.

What's the time period, Your Honor?

THE COURT: Well, actually, it's more complicated than that because there was a balance left over from December 2021, according to the invoice.

But the legal fees, according to the invoice, the legal fees for January alone were $39,000.

THE WITNESS: Yes. That's my recollection.

**THE COURT:**  Okay.  All right.  So...

**THE WITNESS:**  We took --

**THE COURT:**  Do you know, had you been billed for February?  Like, there's no reference for February --

**THE WITNESS:**  No, we hadn't.  That's it.  We had a lag in billing with Mr. -- at Horn Williamson, with -- I always forget his name -- with our lawyer there.

We had actually asked for the fees, and he still hadn't gotten pulled together.  You know, there was always some issue with discounting or looking at this and looking at that.

So I can definitively tell you that we had no other invoices presented to us.  We were meticulous about that.

In other words, you know, I had been warned over and over again, "Please don't start becoming a lawyer on this issue."  And we looked at the calculations with our counsel and then tried to collect everything as honestly and forthrightly as we could do.

But I believe we did not have any other invoices yet presented to us.

**THE COURT:**  All right.  So that means that when you filed the complaint, you make reference to the invoice that's dated March 7, but it only covers the fees that had been incurred by January 31, 2022?

THE WITNESS:  Yes, Your Honor.

THE COURT:  Now, you were asking for the fees that had been incurred in February and prior to March 29 when you filed the complaint, correct?

THE WITNESS:  Correct.  And with an advancement, Your Honor, we would be expecting to get -- advance the fees on a go-forward basis.  That was the point.

THE COURT:  Right.

THE WITNESS:  We've had been deprived of that now for quite some time.

THE COURT:  So, but this means that at the time you filed the complaint, because you were asking for both historic, historical, as well future fees, correct?

THE WITNESS:  (Witness nods head.)

THE COURT:  Actually, let me back up.

Did you have any reason to expect that the February or March fees were going to be significantly less than the January 2022 fees?

THE WITNESS:  They might have been because it was actually in a lull between different phases of the -- we were doing preliminary objections, which were motion to dismiss, very protracted and very expensive, as you can see from the prior.  And then we were about to move into discovery and some other issues.

And there had been some delayed from Covid.  So we did actually have some very small fees at different times.

And then with the delay on the confidentiality skirmish that we had, everything had slowed down. Mr. Pileggi didn't want to go forward as well there with -- in front of you, Your Honor, because we were waiting to see what was going to happen with the papers filed on behalf of the breach of confidentiality of the protective order.

**THE COURT:**  In fact, I stayed the case so you could only have to fight it on one front.

**THE WITNESS:**  Right.  And that went along for, I mean, months because the Montgomery County court system is fairly backed up, from my experience and from what I've seen, because of Covid and other backlogs.

So there were periods of time -- I mean, I really would not want to say just off of memory, but I do know we've looked at it, and we can present that to you.

**THE COURT:**  All right.  Well, bottom line is then, so you're not clear, as you sit here today, certainly as to what the fees would have been, in your mind, on March 29, 2022, for February --

**THE WITNESS:**  I'm pretty sure, Your Honor, that they were less than 75, but I'd have to look at the

scratch paper to see.

THE COURT:  Even when you count the 47 from the January?

THE WITNESS:  Yes.  Yes, Your Honor.

THE COURT:  Okay.

MR. LADIG:  Your Honor?

THE COURT:  Yes.

MR. LADIG:  If I may, I have the Horn Williamson invoice covering the February-March time period.

THE COURT:  Okay.  And how much are they?

MR. LADIG:  $10,000.

THE COURT:  Okay.  Total?

MR. LADIG:  Total.

THE COURT:  Okay.  All right.  So then, historic is not going to be an issue.  Now we're back to what the real issue is, and we came in here, and the reason why I said what I did at the outset.

How can you possibly think, when you're asking for future, for advancement of future fees to litigate that case, and you've already incurred $57,000 at that point, as of the filing of the complaint, according to your math, right?  What you just gave me?  You said $10,000?

MR. LADIG:  Yes.

**THE COURT:** Right? Plus the 47. So we're talking 57, $58,000. And now we're here years later. And we know what the reality is.

But to suggest that, even that as of March 2022, that less than $20,000 would be incurred in future legal fees.

**THE WITNESS:** I think, Your Honor, that one of the issues was that in looking at it, we felt that it belonged in Chancery; there would be expedited procedure there, and that no advancement would be given until some later time. And, therefore, the jurisdictional issue at the time was, "What do we have here?"

In other words, we didn't think it belonged here, period.

**THE COURT:** I mean, that may be, but, you know, listen, I wish I didn't have this case either. I'd love it to be in Chancery Court, but I've got to, you know, follow the rules.

And the rules are, if somebody removes it pursuant to diversity jurisdiction and the amount of controversy exceeds $75,000, I have jurisdiction.

And what I'm having a hard time understanding is, as of March 29, 2022, it looks like you've already incurred $58,000 in fees; you file a complaint asking for, not only reimbursement for those fees, but for whatever

fees are going to come back the pike in litigating this very, very litigious Pennsylvania case; and your lawyers are telling me there's not $75,000 here to resolve this controversy. That's a hard one to swallow.

**THE WITNESS:** I think it probably came up with the way, under Delaware law, they treat the advancement. And, again, it's certainly -- I personally -- it doesn't matter to me if it's in front of you or the Chancery Court.

I do know, Your Honor, from prior cases, that subject matter jurisdiction is not something that you take lightly, even a recent case, two or three months ago, where we -- and so I think that --

**THE COURT:** You mean a case where you were a lawyer?

**THE WITNESS:** Yes.

**THE COURT:** Okay.

**THE WITNESS:** Yes, Your Honor.

So I think that we were being extra cautious on that end as well, to make -- that's why it was briefed. So I don't believe that there's -- there was any attempt to pull one over on you, I guess, or anything else. We were being sensitive to that issue.

And I know in discussions that it was something we did look at carefully because of the underlying

advancement law and the way that those costs were incurred.

**MR. LADIG:** Your Honor, if I may?

**THE COURT:** Yes.

**MR. LADIG:** So, I mean, we didn't take this issue lightly either. There isn't, or we did not find a case where an advancement claim had been removed like this, where the amount sought at the time of the complaint was less than the jurisdictional minimum.

But, you know, inevitably, it probably would reach more -- there isn't a case out there. We couldn't find a case like that. The only case law that we could find talked about -- it says jurisdictional amounts are determined at the beginning of the case.

And the second, I think, aspect of that -- and this is what Mr. Zahralddin was hinting at with how advancement cases go -- at least, you know, ordinarily, what happens is, you get -- you would get a ruling. If we had proceeded a pace on the complaint that was filed, we would have gotten a ruling that said they're liable for advancement, and the invoice that was submitted with March 25, that has to be paid.

Any further orders from the Court would require what is essentially separate proceedings. It would be seen in the same case, but we would have to go through a

whole separate proceedings. And that's actually in the complaint that we have. It says we want an order setting up this separate proceeding. FitTracks, is what it's -- is what it's called.

And you have to go and you submit to the either side, and then they have to pay a certain amount. And then you meet and confer. And every couple months, then you come back and -- depending on what's -- what you're fighting about.

So at least, you know, for those of us who spend more time over in the Court of Chancery, those proceedings, we always look at them very differently. And when we had that experience, plus, you know, the lack of a case that was directly on point, plus the other language that was out there, that's why we thought it was relevant to make this argument.

**THE COURT:** All right. I still find it very unsatisfying, but what I'm going to do is, I'm going to deny the motion to remand. I don't think, I mean, under the *Dart* test, which by the way, they didn't cite it either. So, I mean, you know.

But when a defendant seeks federal court adjudication, the defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the Court. And if it is, then

we have not clear and convincing evidence or any other standard, we have a preponderance of the evidence determination, both sides are permitted to present evidence.

I think even based on the plaintiffs' testimony, it would be reasonable for me to infer that the expectation would be, as of March 22 or March 29, 2022, that future fees that were covered by the claims for relief, put in that complaint, would have exceeded certainly more than $30,000.

And that, therefore, as of the filing of the complaint, when you couple that with what's undisputed evidence of the January fees totaling $48,000, the amount in controversy was satisfied.

I'm not going to impose sanctions. I'm not going to entertain a motion for sanctions. But what I am going to say to the lawyers: Mr. Goldman, unlike you, appears in my court a lot, so there is an expectation of more familiarity with the federal law and practice.

And what's disturbing for me is, I actually think the case should be in Chancery Court, right? I mean, that's where this case really ought to be. But this is one where they've properly removed it.

And I stayed the case sensitive to the plaintiffs' position many years ago. But once the case

was reopened and especially once we had litigation, so we actually had historic fact that would confirm what you would reasonably expect would have been in somebody's head in March of 2022. And we shouldn't have had to litigate this amount in controversy. And we should have had better research from both sides that would have identified what really was the relevant standard.

And instead, my clerk and I had to spend an undue amount of time. And, you know, we're just really, really busy and should not have to do that.

MR. LADIG: I don't disagree, Your Honor.

THE COURT: All right. So I'm going to... you may be seated, sir. We're just going to --

THE WITNESS: Thank you, Your Honor.

THE COURT: We're going to deny the motion to remand. I'm going to take jurisdiction over this case. I think have satisfied *Dart* by preponderance of the evidence that the amount in controversy existed at the time given the request for future fees.

And now let's hear argument on the motion to dismiss.

MR. LADIG: Thank you, Your Honor.

THE COURT: All right. Thank you.

MR. SCHWEMLER: Your Honor, one aspect of our motion to dismiss that I'd like to talk about first is the

request that the matter be dismissed altogether.

The bylaws at issue, quoted in the plaintiffs' complaint at Paragraphs 12 and 30, are completely inaccurate.  I don't know where they got those quotes from, but they omitted key language from the bylaws.

And that key language is that anyone seeking indemnification or advancement needs to be acting on behalf of the corporation.  That phrase is actually omitted for some reason -- I assume it's inadvertence.  I hope it's not intentional -- from the citations and quotations in the plaintiffs' own complaint.

But if you pay attention to what the bylaws actually say in that regard, no one can seek advancement unless they are acting on behalf of the corporation, on behalf of Elliott Greenleaf.  There is no way you can read the complaint filed in this case in Pennsylvania to make it read that any of these defendants were acting on behalf of Elliott Greenleaf.  They were acting contrary to the interests of Elliott Greenleaf.

Now, in that regard, Judge, we do cite to one Pennsylvania Superior Court case, the *Souder* case, which collects opinions from Delaware, which say that you don't get advancement, you go don't get indemnification if you are acting for your personal interests, if you are acting against the interests of the corporation.

Now, ironically, that *Souder* case was decided under Delaware law because it addressed a Delaware corporation.  But it's probably the only case we could find in Pennsylvania which addresses these circumstances here, which kind of raises another point.  I mean, we are -- part of our motion to dismiss is requesting that Your Honor decline to exercise jurisdiction over this matter.

**THE COURT:**  Right.  And I'm, frankly, inclined not to exercise jurisdiction over this matter, and I'm more inclined to write an opinion addressing DJ jurisdiction, which is discretionary --

**MR. SCHWEMLER:**  Yes.

**THE COURT:**  -- than I am writing a contract-based case when I don't even have precedential, you know, binding law, right?  Why don't you address that.

**MR. SCHWEMLER:**  The law of Pennsylvania, Judge?

**THE COURT:**  No.  Why don't you address the DJ argument.

**MR. SCHWEMLER:**  Oh.  Sure.

Your Honor has ultimate discretion to decline jurisdiction under Declaratory Judgment Act for a case such as this.  And I don't think there's any dispute amongst the parties that this is a declaratory judgment proceeding.  It becomes pretty clear by the prayer for

relief in the complaint.

Now, there is a parallel state court proceeding, clearly. Certainly, by May 20 of 2022, there was clearly a parallel state action because that is when the defendants, before you -- I'm sorry, the defendants in the Pennsylvania action, Judge, the plaintiffs here, filed a counterclaim alleging that they're entitled to indemnification under their interpretation of the bylaws.

So what we have now is, them splitting their causes of action, basically, coming here into Delaware and seeking an adjudication on the interpretation of the bylaws, which as I pointed out earlier, is not the actual bylaws, but so be it.

And then in Pennsylvania, you've got an action seeking to interpret the bylaws for a different court and a different judge. So you clearly have the parallel state court proceeding. And that is the most important factor to look at, Your Honor, in declining jurisdiction in this case.

There are others, of course, but the point being, it's the same parties, the same issues, the same effect of the alleged misconduct of the plaintiffs before you are at issue in Pennsylvania. So all the same issues.

And, you know, besides the whole, as you say, Your Honor, the declaratory judgment aspect of this,

there's a risk here of inconsistent adjudications, clearly.  And I don't think anybody wants to see that.

There is, also, in the state court in Pennsylvania, and believe me, Your Honor, a very fully developed factual record, many depositions.

THE COURT:  What is the status of the case right now?

MR. SCHWEMLER:  The plaintiffs, here before you, Your Honor, defendants in that case, have just filed a motion for summary judgment of about more than 260 paragraphs and more than 80 pages of briefing, with about 35 exhibits, I think.  And we're in the process of developing responses to that.

But discovery is closed.  So it's well on its way.  There's actually two motions.  One --

THE COURT:  They filed the motion.  So like, you have 30 days?  What do you have to respond?

MR. SCHWEMLER:  We got a slight extension, Judge.  So we're going to be responding by, I believe, October 9 or 10.  And then there's possibly other motion practice out there.  Really depends on what our judge does and --

THE COURT:  Does the summary judgment motion address the counterclaim?

MR. SCHWEMLER:  No, Your Honor.  They're just

seeking to dismiss the claim outright.  But it does not specifically address the counterclaim for indemnification.

**THE COURT:**  And I don't know Pennsylvania procedural law.  Let's say they won.

And, Mr. Ladig, are you going to do the argument?

**MR. LADIG:**  Yeah.

**THE COURT:**  Okay.  I'll ask you the same question.

So let's say you won, you prevailed on your summary judgment motion, what does that do the counterclaim under Pennsylvania State Court practices?  Does anybody know?

In other words, does the counterclaim still exist?

**MR. SCHWEMLER:**  Oh, yeah.  I mean, they would want indemnification for -- under their interpretation of the bylaws.

**THE COURT:**  I know that's on the merits.  But what I want to know is, like, for instance, if you are saying this, let's say they prevailed on summary judgment, are you going to take the position that the counterclaim is gone?

**MR. SCHWEMLER:**  I'd love to take that position, Judge, but I have a feeling that's not the position they

would take.

THE COURT: But do you know?

MR. SCHWEMLER: I don't know.

THE COURT: Do you know, Mr. Ladig?

MR. LADIG: We're just trying to figure that out, Your Honor. At least under Delaware law, under 145(c), if you were successful on the merits, which includes winning on summary judgment as a defendant, you are entitled to mandatory indemnification regardless of what the underlying claims are about.

THE COURT: No, no. But that goes to the merits of it. I just want to know procedurally.

I want to know that if you were to prevail on your summary judgment, getting rid of their claims -- and by "their," its claims. It's only against Elliott Greenleaf, right?

MR. LADIG: Correct.

THE COURT: Okay. So if you were to prevail under Pennsylvania rules, would your counterclaim remain liable? Or I don't if the right --

MR. SCHWEMLER: Your Honor, my colleague, Mr. O'Boyle, knows the answer, I guess.

THE COURT: Okay. Let's see. Mr. Ladig, you can challenge it, whatever he says.

Go ahead.

**MR. O'BOYLE:** Colin O'Boyle. We've asserted, as plaintiff, our claims; they asserted their counterclaims. The only party that has moved for summary judgment is the defendants as to our claims. There is no motion for summary judgment to defeat their counterclaim.

And, therefore, if they prevailed on their motion for summary judgment to defeat our affirmative claims, that wouldn't have any impact to their counterclaims. They would then proceed on their counterclaims, which we haven't moved for summary judgment on.

**THE COURT:** Okay. And you're sure about that under Pennsylvania Rules of Civil Procedure?

**MR. O'BOYLE:** Unfortunately, yes, Your Honor.

**THE COURT:** Okay. All right. Well, if you all differ, let me know.

**MR. SCHWEMLER:** Your Honor, as I'm sure you know, the *Reifer* case from the Third Circuit lists a whole bunch of different factors to address when you're looking at decline in jurisdiction.

**THE COURT:** Yeah. Why don't you run through them and tell me what you think I need to consider. I mean, the Third Circuit Court's language is somewhat, I mean, it's discretionary, right? It says the Court should when relevant. It's kind of --

**MR. SCHWEMLER:**  That's right.

**THE COURT:**  -- you know.  What do you think?
Go through those 12 factors.

**MR. SCHWEMLER:**  Sure.

**THE COURT:**  Tell me what you think I need to
make sure I consider.

**MR. SCHWEMLER:**  Let me jump ahead to number, I
think it's Number 7 in the opinion.  But that is the
procedural fencing aspect of this.

If you look at the timing of everything that
occurred here, Judge -- and we've done our best to lay it
out in our motion to dismiss -- but in February of 2022,
these parties received a ruling from the state court in
Pennsylvania, which basically said, "I have to
jurisdiction over you.  And venue is proper.  And now you
have to answer the complaint."

What they did -- what happened thereafter was,
their counsel filed a petition to withdraw citing
irreconcilable differences, and they asked for a stay of
the case.

The case was stayed in Pennsylvania while new
counsel was supposedly to transition in.  But that's
exactly when the plaintiffs in this case came down to
Delaware and sued Elliott Greenleaf in Chancery Court.

So the scenario is basically:  Okay.  I don't

want to be in front of a Court in Pennsylvania that's already told me that you're wrong, you can't just be sued in Delaware, I can sue you here in Pennsylvania. So I'm running down to Delaware and filing satellite litigation on the advancement claim.

So that type of procedural fencing, Judge, I think, is exactly what the *Reifer* opinion sort of addresses in its factors.

But another factor that the Court looked at is whether a decision here would resolve uncertainty underlying the controversy. And we would submit that's simply not the case.

You've got all this litigation pending in Pennsylvania where the alleged misconduct of these individuals is at issue. There's going to be a jury that's impaneled looking at it all. There's going to evidentiary rulings.

So even if advancement was granted here, Judge, you're going to have rulings back in Pennsylvania in which possibly Elliott Greenleaf could claw it all back. But you're also proceeding here under a record that is hardly as mature as that before the Court in Pennsylvania. So the uncertainty will not be cured by any ruling coming from here, Your Honor.

Now, the convenience of the parties? Well, the

plaintiffs before you, Judge, they live in Delaware, yes, but the parties have been litigating in Pennsylvania for four and a half years.

They've gone through, I don't know -- they've had at least three law firms involved on their behalf in Pennsylvania. So I don't think, at this point, they can claim any inconvenience litigating in Pennsylvania.

And going to a point you raised earlier, Judge, I think you alluded to it, there is a public interest in having this kind of issue addressed by the Pennsylvania courts.

We couldn't find a Pennsylvania opinion, at least one on the appellate level, which addressed this issue under Pennsylvania law for a Pennsylvania corporation, individuals who are accused of acting directly contrary to the interests of their corporation. Are they entitled to advancement? That might be a question of public policy that the Pennsylvania courts really should be addressing.

And as I said, the *Souder* opinion, that collects opinions from Delaware. But this might be a pretty unique circumstance. And the way this case is going, Judge, I wouldn't be surprised if there's appeals. And this is the kind of issue that we think would be a first impression for the Pennsylvania courts, and the

Pennsylvania courts should be addressing it.

And also, of course, Judge, there's this -- these factors of, you know, the Court restraining from addressing issues pending in a state court and avoiding duplicative litigation. I think I already touched upon that.

There are lots of issues being addressed by the judge in Montgomery County, Pennsylvania. And there is a risk of duplicative or contradictory rulings on the interpretation of the bylaws. And the effect of these parties' misconduct, or alleged misconduct, that's alleged in the complaint.

So those are all, sort of, factors that we believe mitigate toward the Court exercising its substantial discretion in declining jurisdiction under Declaratory Judgment Act, and relegating this matter, really, to Pennsylvania where it belongs, where it's always belonged.

**THE COURT:** All right. We can go ahead with the other two arguments. Anything else you want to say the contractual issue?

**MR. SCHWEMLER:** Well, I would circle back, Judge, to this idea of the bylaws being misquoted in the complaint.

And keep in mind, these parties ran into

Chancery Court. They filed a motion for expedited determination. They asked for a summary proceeding. They wanted a decision within a day or two. Okay? But those bylaws were misquoted in a very material way. Like I said, I hope it wasn't intentional.

But if you look at the actual document, which we attached to our motion to dismiss -- we're permitted to do that. It's referenced in the complaint -- I think you will agree with us, that only if you're acting on behalf of the corporation, on behalf of Elliott Greenleaf, are you entitled to indemnification and, in turn, advancement. That would be Section VII of the bylaws, Sections 1 and 2.

Thank you, Your Honor.

THE COURT: All right. Thank you.

All right. I will hear your answer.

Let's start with the Pennsylvania procedural issue. Anything on that? You want to challenge that?

MR. LADIG: With respect to the indemnification claim remaining, if the summary judgment motion is granted, yes.

THE COURT: Correct. In other words, for instance, you know, I think an argument that will weigh in your favor... let's suppose for argument's sake, Pennsylvania Civil Rules of Procedure were such that if a defendant prevails on summary judgment, counterclaims just

go away. Right? I doubt it, but it might be.

And so if that were the case, you know, that would say, hmm, maybe there won't be a resolution in state court. For instance, if you win, or maybe I should just wait for two months until summary judgment is litigated. That's what I'm getting at.

Do you have any reason to doubt what was said about what would happen to the counterclaim were you to prevail?

**MR. LADIG:** No. No, I don't. I don't. I think the distinction we draw, Your Honor, is that that is counterclaim for indemnification, which is different than a claim for advancement, which is what is being brought in this case. Because indemnification claims require final adjudication on the merits before the Court can do anything with the indemnification claim.

Whereas, the advancement claim, by its nature, is decided prior to any adjudication on the merits. And so, therefore, you're not asking the same question because indemnification raises issues about whether the party was acting in good faith, potentially.

And as I said before, if the defendant wins in the merits case, he's entitled as a statutory matter.

**THE COURT:** I mean, doesn't the agreement, itself, provide, under the paragraph named "Advances,"

that the corporation shall pay the expenses actually or reasonably incurred in defending, blah, blah, blah, on behalf of any person entitled to the indemnification under Section 1 above in advance of the final disposition.

So how is it... I mean, substantively, isn't it the same thing as indemnification?

MR. LADIG: No, it's not. We have years of case law from the Court of Chancery that says that when you have that language "in advance of the final disposition of such actions due to proceeding," that means that all -- well, let me back up.

The "any person entitled to indemnification under Section 1," all that means is if you could be entitled to indemnification under Section 1. And the reason why they have that is because some people are -- sometimes only directors are entitled to indemnification. Sometimes they expand that down to employees as well, or officers, or something like that. So we have to fall into that initial group.

It says, "Okay. Well, you could be entitled to indemnification." And so because you could be, under this language, you're entitled to advancement in advance of the final disposition. Because, otherwise, it swallows itself and you would never get advancement.

Because you're going to hear the argument that

these folks are making, which is, well, they're bad people and they're not going to be entitled to indemnification anyway, and so we shouldn't be required to advance them. And that argument has been rejected time and time and time again by the Court of Chancery. And it is simply contrary to all matters of Delaware law.

And so -- because indemnification is different. And the Court of Chancery and Delaware Supreme Court recognize that it is -- they are related, but not identical concepts, is how the courts talk about them.

They're related in the sense that they are covering costs incurred by directors and/or officers or employees, incurred in defense of an action brought by reason of fact that they were a defendant -- or excuse me, a director or employee of the company, but it's asking a different question.

And that question really is simply: Are they entitled ultimately to advancement based upon what the language of either, in this case, the bylaws say, or you can have it in a contractor in some other fashion.

**THE COURT:** All right. Now, the test under the Third Circuit law is: Will the resolution of the claim in the state court necessarily resolve the issue before the District Court, right?

**MR. LADIG:** Right. I'm just trying to think.

**THE COURT:** I mean, this is in *Kelly*. In *Kelly*, right? 868 F.3d at 284, n.8. For the proceeding to be parallel, all that is required is, quote, "that the resolution of an issue in one case will necessarily settle the matter in the other one."

**MR. LADIG:** Right. So the resolution of the advancement claim in this claim does not resolve the indemnification question in the state court case.

**THE COURT:** Right. But the question is: Will the indemnification issue in the Pennsylvania Court necessarily resolve the advancement?

**MR. LADIG:** But it -- so the answer is, I mean, yes, in the sense that you would never get advancement if that were correct --

**THE COURT:** Right.

**MR. LADIG:** -- because then you're not paying in advance of the final disposition. Because remember, you're question is premised on that, well, we're going to resolve the indemnification claim. Does that then take care of advancement? Well, yes, it does, but that requires litigation on the merits of the entire other case, which wholly defeats the advancement right.

**THE COURT:** Right. And I think I have said the challenge for you, right, is that if I read that statement literally, and I don't factor in all the other factors,

you'd lose, because as a matter of logic, it would necessarily resolve it, but because of the unique nature of advancement, which allows for criminal defendants to --

MR. LADIG:  Right.

THE COURT:  -- obtain payment.  And yet, if they're found guilty, the company has to claw back the money.

MR. LADIG:  Correct.

THE COURT:  But we wouldn't wait until the resolution of a criminal case to determine whether or not the person were entitled to advancement of fees to litigate the criminal case.

MR. LADIG:  Correct.  Because that eviscerates the whole right to advancement in the first place.  And the -- you know, depending on where the right to advancement emanates from, it could defeat the contract, right, of somebody.  If they had entered into an indemnification and advancement agreement, you know, they wouldn't have anything.  It would just be a -- that would be a, you know, false promise.  So...

THE COURT:  So what do you do with the contract claim?  You deal with the argument and why don't you justify the absence on behalf of corporation language in the quote.

MR. LADIG:  I don't know.  I don't know what it

is.  It very well could be -- even if it was, Your Honor, again, they're not looking at this in the way that Delaware courts do.  And that's because Delaware courts focus on whether there is a causal connection or nexus between any underlying proceeding in one's official corporate capacity.  And that's on Page 17 of our opposition brief.

And that -- and then we continue.  It says, "This nexus or causal connection is established if, quote, 'corporate powers were used or necessary for the commission of the alleged misconduct.'"  And that's from *Stevard LLC versus SR Investors LLC.*

**THE COURT:**  All right.  So how are corporate powers used here?

**MR. LADIG:**  You cannot have a fiduciary duty unless you have corporate powers.  That is the whole nature of a fiduciary duty breach, is that -- that you are acting as an agent or a fiduciary for other people, and there isn't anything -- well, let me back up.

Equity is stepping in to fill the gap because there isn't anything statutory written down.  It's saying that if you are exercising these powers on behalf of other people, then equity is going to impose these conditions upon you.

And that is exactly the nature.  Count 1 of

their complaint for breach of fiduciary duty.  You cannot have a breach of fiduciary duty claim unless you are exercising powers given to you by the bylaws and Certificate of Incorporation of Elliott Greenleaf.  Simply impossible.

And they actually say in here, yeah, they -- you know, they were agents of the firm.  That's at Paragraph 122.

Let's see, what else?  You know, breach of the duty of loyalty.  That's just a different way of saying breach of fiduciary duty.

Again, you don't have a duty of loyalty if you just, third party acting at arm's length.  You've got a duty of loyalty because you are fiduciary, and you're exercising power that is given to you by the entity.

And so that's all you really need in order for the defendants here to be entitled to advancement.

Now, there are some other claims here.  Maybe there are some that are just personal, but that's what the separate FitTracks proceeding, that I was talking about earlier, that's where that comes in, where you just, you chop it up.  You say, "Okay, well, this is for this claim and this is for this claim.  And so we're only asking for 80 percent of the bill, or something like that."

So, you know, that's my answer on that one.

And, Your Honor, you know, I just wanted to comment on a couple of other things here.  You know, you had a colloquy with my friend about, you know, this being a declaratory judgment action, which -- I mean, yes, we asked for a --

**THE COURT:**  A declaratory judgment.

**MR. LADIG:**  We did.  But you just denied our -- you just also said it's also a claim for in excess of $75,000.  There's both.  And so it's not just a declaratory judgment.

**THE COURT:**  Do you know cases in the Third Circuit that say I should distinguish a DJ discretionary or I should distinguish a case where there's a DJ alleged, plus damages, versus just a DJ in exercising my discretion whether to take on the case?

**MR. LADIG:**  I am not aware of anything off the top of my head, Your Honor.

I mean, that's another -- I did look for that kind of stuff, too.  I couldn't find it.

But the -- this is -- I mean, this is 1(a) and 1(b), if you will.  It is declaratory judgment.  Based on that declaratory judgment, we're entitled to this.

It's not a -- they're not separate things.  It's all part of one continuous claim, is what, I would -- I guess, what I would say.

And then with respect to whether we should let a Pennsylvania Court decide this because it might be a case of first impression, you know, the *Spring City* case that we cited in our brief -- it's actually from the Eastern District -- actually, excuse me, *Johnson versus Farm Journal*. That's from the Eastern District -- it says, "Because Pennsylvania authority regarding the interpretation of indemnification and advancement provisions under the BCL is lacking, the Court turns to Delaware authority to guide its analysis."

And so there isn't any reason why a Delaware court, whether it's you or any other Delaware court, wouldn't decide. You would all be looking at the same stuff. So I don't think that that is a reason why the Court should decline jurisdiction.

THE COURT: Okay.

MR. LADIG: Okay. Unless Your Honor has any other questions.

THE COURT: No. Thank you very much.

MR. LADIG: Thank you.

THE COURT: All right. Anything else you want to say in rebuttal?

MR. SCHWEMLER: Can I briefly respond, Your Honor?

THE COURT: Sure.

**MR. SCHWEMLER:** Speaking as a Pennsylvania lawyer, who litigates primarily in Pennsylvania, there is a fiduciary duty of an ordinary employee to their employer under Pennsylvania law. A whole other reason why this was really a matter that should be addressed by a Pennsylvania court.

You don't have to be corporate officer or director to have a fiduciary obligation to your employer. That's the case law we're going to be briefing on the motion --

**THE COURT:** I'm sorry. I'm confused.

**MR. SCHWEMLER:** Sure.

**THE COURT:** What's the language that you say is missing, that they failed to quote that's so --

**MR. SCHWEMLER:** On behalf of the corporation.

**THE COURT:** So why would it matter as employee, versus an officer or versus a director?

**MR. SCHWEMLER:** Oh, Your Honor --

**THE COURT:** If you're alleging that they're an agent of Elliott Greenleaf when they engaged in the conduct from which Claim 1 arises, why aren't they engaged on behalf of the corporation regardless of their status?

**MR. SCHWEMLER:** I'm sorry, Your Honor. I was responding to Mr. Ladig's contention that you have to exercise corporate powers in order to be a fiduciary. And

under Pennsylvania law, that's not the case.  You can be an ordinary employee and still be in breach of your fiduciary duties to your employer.  That was my point.

THE COURT:  Okay.  I'll take that point.

The harder question for you is:  But you allege that they acted... that they were agents, correct?

MR. SCHWEMLER:  I don't know what portion of the complaint Mr. Ladig was referring to.

THE COURT:  I thought it was Claim 1.  What claim was it?

MR. LADIG:  Yeah.  Your Honor, may I read just something?

THE COURT:  Yeah.

MR. LADIG:  So it says, "these fiduciary duties," Paragraph 122 --

THE COURT:  It's not Claim 1, though.  Or maybe --

MR. LADIG:  That's Count 1.

THE COURT:  Oh, it is.  Okay.  All right.

MR. LADIG:  "These fiduciary duties arise out of their employment by the firm and their status as shareholders of the firm and/or their status as members of the firm board of directors."

THE COURT:  Did it not use the word "agents"?

MR. LADIG:  Yes.  Well, that's in the first

sentence of that same paragraph.  It says, "as agents of the firm."

MR. SCHWEMLER:  Either way, Your Honor, you don't have to be a director of a corporation or an officer of a corporation to have a fiduciary obligation to your employer.  That's my point.

And there's been a lot of discussion here from a colleague about Delaware law says this, Delaware law says that.

This is a Pennsylvania company.  Elliott Greenleaf is incorporated in Pennsylvania.  It's based in Pennsylvania.  Pennsylvania law would have to be applied to any interpretation of the bylaws or anything else.

There is absolutely no reason why these individuals could not have sued in Pennsylvania for this advancement claim.  There's a reason why they're down here, and it's not -- it has everything to do with forum shopping, frankly, Judge.  And this really should be taken care of by the Pennsylvania courts.

The Pennsylvania courts should be able to decide whether or not, under the circumstances alleged in this case, in which these individuals are accused of literally stealing from their employer, whether they would be entitled to indemnification or advancement in any situation.

Thank you, Judge.  Unless you have some questions for me.

THE COURT:  No.  All right.  Thank you very much.

All right.  Thank you all.  I'll take it under advisement.

But the motion to remand is denied.  So I am going to take jurisdiction over the case.  All right?

MR. SCHWEMLER:  Thank you for your time, Your Honor.

MR. LADIG:  Thank you, Your Honor.

THE COURT:  All right.  Off the record.

(The proceedings concluded at 4:42 p.m.)

CERTIFICATE OF COURT REPORTER

I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Bonnie R. Archer
    Bonnie R. Archer, RPR, FCRR
    Official Court Reporter
    U.S. District Court

**[136]**

**BY MR. LADIG: [6]**
1:8/13 1:9/19 1:12/11
1:14/10 1:16/14 1:20/4
**MR. GOLDEN: [1]**
1:2/16
**MR. LADIG: [66]**
**MR. O'BOYLE: [2]**
1:41/1 1:41/14
**MR. SCHWEMLER:**
**[27]** 1:12/1 1:12/5
1:34/24 1:36/13
1:36/17 1:36/20 1:38/8
1:38/18 1:38/25
1:39/16 1:39/24 1:40/3
1:40/21 1:41/17 1:42/1
1:42/4 1:42/7 1:45/22
1:55/23 1:56/1 1:56/12
1:56/15 1:56/18
1:56/23 1:57/7 1:58/3
1:59/9
**MS. RICHARDS: [1]**
1:2/21
**THE CLERK: [2]** 1:8/4
1:8/11
**THE COURT: [115]**
**THE WITNESS: [29]**
1:8/6 1:16/13 1:20/21
1:20/23 1:21/4 1:21/14
1:21/17 1:22/2 1:23/6
1:23/10 1:23/21
1:24/13 1:24/17
1:24/25 1:25/2 1:25/5
1:26/1 1:26/5 1:26/10
1:26/15 1:26/20
1:27/13 1:27/24 1:28/4
1:29/7 1:30/5 1:30/16
1:30/18 1:34/14

**$**

**$10,000 [2]** 1:28/12
1:28/24
**$100,000 [3]** 1:4/12
1:10/18 1:12/17
**$122,000 [2]** 1:3/3
1:3/24
**$15,000 [1]** 1:5/3
**$152,000 [1]** 1:14/20
**$175,000 [2]** 1:4/15
1:21/11
**$20,000 [1]** 1:29/5
**$27,000 [2]** 1:22/17
1:22/19
**$30,000 [3]** 1:7/1
1:23/9 1:33/10
**$35,000 [1]** 1:22/15
**$39,000 [1]** 1:24/24
**$40,000 [1]** 1:24/16
**$45,000 [1]** 1:6/19
**$48,000 [4]** 1:5/16
1:5/19 1:20/6 1:33/13
**$57,000 [1]** 1:28/21
**$58,000 [2]** 1:29/2
1:29/24
**$75,000 [8]** 1:3/5

1:4/1 1:7/6 1:7/12
1:8/1 1:29/21 1:30/3
1:54/9
**$8,000 [1]** 1:21/16
**$8,700 [1]** 1:17/7

**'**

**'21 [2]** 1:10/7 1:13/11
**'22 [1]** 1:14/11
**'corporate [1]** 1:52/10

**/**

**/s [1]** 1:59/21

**0**

**00412 [1]** 1:1/5

**1**

**1 [12]** 1:9/21 1:46/12
1:48/4 1:48/13 1:48/14
1:52/25 1:54/20
1:54/21 1:56/21 1:57/9
1:57/16 1:57/18
**10 [1]** 1:38/20
**100 [1]** 1:13/16
**100,000 [1]** 1:13/15
**11 [5]** 1:4/16 1:15/9
1:15/23 1:18/8 1:20/7
**12 [2]** 1:35/3 1:42/3
**122 [3]** 1:7/10 1:53/8
1:57/15
**13 [1]** 1:9/3
**13 years [1]** 1:9/3
**140 [1]** 1:14/16
**145 [1]** 1:40/7
**150 [1]** 1:14/16
**150,000 [1]** 1:13/16
**16 [1]** 1:1/11
**17 [1]** 1:52/6
**175 [2]** 1:13/4 1:16/4
**175,000 [1]** 1:13/6
**1:30 [2]** 1:1/11 1:2/12

**2**

**2 [7]** 1:4/21 1:16/16
1:17/13 1:17/15
1:17/20 1:17/21
1:46/12
**20 [1]** 1:37/3
**2020 [1]** 1:9/8
**2021 [3]** 1:10/9
1:13/12 1:24/22
**2022 [17]** 1:6/4
1:6/12 1:6/17 1:7/2
1:13/17 1:21/13
1:21/16 1:23/8 1:25/25
1:26/19 1:27/23 1:29/5
1:29/23 1:33/7 1:34/4
1:37/3 1:42/12
**2025 [1]** 1:1/11
**21 [1]** 1:4/24
**22 [3]** 1:1/5 1:4/25
1:33/7
**22-cv-00412-CFC [1]**
1:1/5
**25 [3]** 1:19/25 1:20/6

1:31/22
**25th [2]** 1:5/15
1:19/19
**260 [1]** 1:38/10
**284 [1]** 1:50/2
**29 [4]** 1:26/3 1:27/23
1:29/23 1:33/7

**3**

**30 [2]** 1:35/3 1:38/17
**30 days [1]** 1:38/17
**30,000 [2]** 1:6/15
1:22/15
**31 [1]** 1:25/25
**31st [2]** 1:9/8 1:9/9
**35 [1]** 1:38/12

**4**

**40 [2]** 1:6/10 1:19/9
**40,000 [1]** 1:19/16
**40,000-something [1]**
1:19/16
**40-some-odd-thousand [1]** 1:19/9
**40-some-thousand [1]** 1:6/10
**47 [2]** 1:28/2 1:29/1
**48 [1]** 1:22/6
**48,000 [2]** 1:19/16
1:21/19
**4:42 [1]** 1:59/13
**4:42 p.m [1]** 1:59/13

**5**

**5 [1]** 1:10/8
**57 [1]** 1:29/2

**7**

**7 [7]** 1:21/19 1:21/24
1:21/25 1:23/8 1:24/16
1:25/24 1:42/8
**75 [1]** 1:27/25

**8**

**80 [2]** 1:38/11 1:53/24
**80 percent [1]**
1:53/24
**844 [1]** 1:1/14
**868 [1]** 1:50/2

**9**

**9 [1]** 1:38/20

**A**

**ABA [1]** 1:8/22
**able [1]** 1:58/20
**about [36]** 1:9/3
1:9/12 1:10/14 1:10/21
1:11/2 1:12/12 1:13/10
1:14/1 1:15/17 1:16/24
1:18/7 1:18/21 1:19/1
1:19/15 1:19/19
1:20/20 1:20/21
1:21/11 1:21/19
1:22/25 1:23/2 1:25/13
1:26/24 1:31/13 1:32/9
1:34/25 1:38/10

1:38/11 1:40/10
1:41/12 1:47/8 1:47/20
1:49/10 1:53/20 1:54/3
1:58/8
**above [3]** 1:4/1 1:8/1
1:48/4
**absence [1]** 1:51/23
**absolutely [1]** 1:58/14
**accepted [1]** 1:32/24
**according [3]** 1:24/22
1:24/23 1:28/22
**accreditation [1]**
1:8/22
**accurate [1]** 1:59/19
**accused [3]** 1:10/5
1:44/15 1:58/22
**Act [2]** 1:36/22
1:45/16
**acted [1]** 1:57/6
**acting [11]** 1:35/7
1:35/14 1:35/17
1:35/18 1:35/24
1:35/24 1:44/15 1:46/9
1:47/21 1:52/18
1:53/13
**action [16]** 1:4/9
1:4/13 1:4/19 1:5/6
1:10/14 1:10/22
1:12/20 1:13/19
1:16/21 1:21/6 1:37/4
1:37/6 1:37/10 1:37/14
1:49/13 1:54/4
**actions [2]** 1:10/17
1:48/10
**acts [1]** 1:17/2
**actual [5]** 1:11/9
1:11/16 1:15/10
1:37/12 1:46/6
**actually [21]** 1:15/18
1:15/20 1:23/2 1:23/11
1:23/11 1:24/15
1:24/20 1:25/8 1:26/16
1:26/21 1:27/2 1:32/1
1:33/20 1:34/2 1:35/8
1:35/13 1:38/15 1:48/1
1:53/6 1:55/4 1:55/5
**additional [1]** 1:6/22
**address [8]** 1:3/7
1:3/9 1:22/12 1:36/16
1:36/18 1:38/24 1:39/2
1:41/19
**addressed [5]** 1:36/2
1:44/10 1:44/13 1:45/7
1:56/5
**addresses [2]** 1:36/4
1:43/8
**addressing [4]**
1:36/11 1:44/19 1:45/1
1:45/4
**adjudication [4]**
1:32/23 1:37/11
1:47/15 1:47/18
**adjudications [1]**
1:38/1
**admitted [1]** 1:2/24
**advance [6]** 1:26/7

1:48/4 1:48/9 1:48/22
1:49/3 1:50/17
**advancement [47]**
1:5/8 1:5/9 1:5/18
1:6/2 1:13/18 1:14/23
1:18/8 1:18/12 1:18/15
1:18/23 1:20/7 1:20/25
1:22/9 1:26/6 1:28/20
1:29/10 1:30/6 1:31/1
1:31/7 1:31/17 1:31/21
1:35/7 1:35/13 1:35/23
1:43/5 1:43/18 1:44/17
1:46/11 1:47/13
1:47/17 1:48/22
1:48/24 1:49/18 1:50/7
1:50/11 1:50/13
1:50/20 1:50/22 1:51/3
1:51/11 1:51/14
1:51/16 1:51/18
1:53/17 1:55/8 1:58/16
1:58/24
**advancements [1]**
1:19/7
**Advances [1]** 1:47/25
**advice [2]** 1:15/5
1:24/12
**advisement [1]** 1:59/6
**affirmative [1]** 1:41/7
**affirmed [1]** 1:8/9
**after [11]** 1:5/1 1:9/5
1:9/10 1:10/10 1:15/23
1:16/1 1:17/25 1:18/23
1:18/24 1:19/10
1:23/24
**afternoon [5]** 1:2/13
1:2/16 1:2/17 1:2/21
1:8/14
**afterwards [1]**
1:23/13
**again [6]** 1:18/15
1:25/16 1:30/7 1:49/5
1:52/2 1:53/12
**against [3]** 1:9/25
1:35/25 1:40/15
**agent [2]** 1:52/18
1:56/20
**agents [4]** 1:53/7
1:57/6 1:57/24 1:58/1
**ago [2]** 1:30/12
1:33/25
**agree [1]** 1:46/9
**agreed [1]** 1:13/5
**agreement [11]**
1:4/11 1:10/21 1:11/17
1:12/3 1:12/14 1:14/18
1:15/25 1:16/1 1:17/11
1:47/24 1:51/18
**ahead [10]** 1:7/25
1:11/24 1:14/4 1:14/6
1:14/7 1:14/9 1:22/12
1:40/25 1:42/7 1:45/19
**all [45]** 1:2/18 1:3/1
1:8/3 1:8/16 1:11/19
1:12/23 1:16/3 1:16/9
1:20/13 1:23/7 1:24/3
1:25/1 1:25/22 1:27/20

# A

**all... [31]** 1:28/15 1:32/17 1:34/12 1:34/23 1:37/23 1:41/15 1:41/15 1:43/13 1:43/16 1:43/20 1:45/13 1:45/19 1:46/14 1:46/15 1:48/11 1:48/13 1:49/6 1:49/21 1:50/3 1:50/25 1:52/13 1:53/16 1:54/24 1:55/13 1:55/21 1:57/19 1:59/3 1:59/5 1:59/5 1:59/8 1:59/12
**allegation [1]** 1:32/24
**allege [1]** 1:57/5
**alleged [7]** 1:37/22 1:43/14 1:45/11 1:45/11 1:52/11 1:54/13 1:58/21
**alleging [2]** 1:37/7 1:56/19
**allows [1]** 1:51/3
**alluded [1]** 1:44/9
**almost [1]** 1:23/11
**alone [1]** 1:24/24
**along [1]** 1:27/13
**already [10]** 1:5/10 1:7/10 1:11/5 1:13/24 1:18/21 1:21/11 1:28/21 1:29/23 1:43/2 1:45/5
**also [10]** 1:7/21 1:10/5 1:15/13 1:20/12 1:20/18 1:38/3 1:43/21 1:45/2 1:54/8 1:54/8
**altogether [1]** 1:35/1
**always [4]** 1:25/7 1:25/10 1:32/12 1:45/18
**am [4]** 1:33/16 1:36/14 1:54/16 1:59/7
**amongst [1]** 1:36/24
**amount [16]** 1:3/5 1:4/14 1:4/19 1:7/5 1:8/1 1:12/24 1:17/6 1:23/14 1:29/20 1:31/8 1:32/6 1:32/23 1:33/13 1:34/5 1:34/9 1:34/18
**amounts [8]** 1:4/23 1:5/10 1:5/14 1:5/16 1:5/18 1:18/21 1:19/4 1:31/13
**analysis [1]** 1:55/10
**another [3]** 1:36/5 1:43/9 1:54/18
**answer [6]** 1:23/10 1:40/22 1:42/16 1:46/15 1:50/12 1:53/25
**any [30]** 1:6/3 1:10/13 1:10/23 1:12/5 1:12/12 1:15/18 1:17/18 1:18/25 1:24/8 1:24/9 1:25/20 1:26/17

1:30/21 1:31/23 1:33/1 1:35/17 1:36/23 1:41/8 1:43/23 1:44/7 1:47/7 1:47/18 1:48/3 1:48/12 1:52/5 1:55/11 1:55/12 1:55/17 1:58/13 1:58/24
**anybody [2]** 1:38/2 1:39/13
**anymore [1]** 1:15/2
**anyone [1]** 1:35/6
**anything [17]** 1:11/10 1:15/15 1:15/24 1:18/2 1:18/9 1:18/20 1:24/1 1:30/22 1:45/20 1:46/17 1:47/16 1:51/19 1:52/19 1:52/21 1:54/16 1:55/21 1:58/13
**anyway [1]** 1:49/3
**apparent [1]** 1:3/19
**appeals [1]** 1:44/23
**appearance [1]** 1:20/16
**APPEARANCES [2]** 1:1/19 1:2/1
**appears [1]** 1:33/18
**appellate [1]** 1:44/13
**applied [1]** 1:58/12
**approach [1]** 1:16/10
**appropriate [1]** 1:7/15
**approximately [1]** 1:21/15
**Archer [2]** 1:59/21 1:59/22
**are [50]** 1:5/24 1:6/6 1:6/22 1:7/4 1:8/14 1:22/9 1:23/1 1:23/13 1:23/16 1:23/17 1:23/19 1:24/9 1:28/11 1:29/19 1:30/1 1:30/3 1:31/13 1:33/3 1:35/3 1:35/14 1:35/24 1:35/24 1:36/6 1:37/20 1:37/23 1:39/5 1:39/20 1:39/22 1:40/9 1:40/10 1:44/15 1:44/17 1:45/7 1:45/13 1:46/10 1:48/15 1:48/16 1:49/1 1:49/9 1:49/11 1:49/17 1:52/13 1:52/17 1:52/22 1:53/2 1:53/14 1:53/18 1:53/19 1:53/19 1:58/22
**aren't [1]** 1:56/21
**argument [12]** 1:3/23 1:4/6 1:4/8 1:23/1 1:32/16 1:34/20 1:36/19 1:39/6 1:46/22 1:48/25 1:49/4 1:51/22
**argument's [2]** 1:6/7 1:46/23
**arguments [1]** 1:45/20
**arise [1]** 1:57/20

**arises [1]** 1:56/21
**arm's [1]** 1:53/13
**arms [1]** 1:3/17
**Armstrong [35]** 1:4/10 1:4/10 1:4/20 1:4/21 1:5/4 1:5/10 1:5/12 1:5/13 1:5/17 1:9/4 1:9/11 1:10/11 1:10/12 1:10/13 1:10/23 1:11/17 1:12/3 1:12/13 1:12/19 1:12/22 1:12/24 1:13/5 1:14/18 1:14/21 1:15/24 1:17/3 1:17/16 1:18/20 1:19/3 1:19/10 1:19/11 1:20/12 1:20/21 1:20/22 1:22/1
**Armstrong's [1]** 1:20/11
**around [2]** 1:3/17 1:13/12
**as [59]** 1:3/10 1:3/22 1:4/3 1:4/5 1:6/3 1:6/7 1:6/9 1:7/7 1:8/8 1:8/10 1:8/19 1:9/6 1:9/21 1:10/22 1:13/3 1:14/22 1:15/5 1:16/16 1:17/2 1:17/20 1:17/21 1:19/13 1:19/23 1:21/25 1:23/23 1:25/18 1:25/19 1:26/14 1:26/23 1:27/6 1:27/21 1:27/22 1:28/22 1:29/4 1:29/23 1:30/20 1:33/7 1:33/11 1:36/23 1:37/12 1:37/24 1:40/8 1:41/2 1:41/4 1:41/17 1:43/22 1:43/22 1:44/20 1:47/22 1:47/23 1:48/6 1:48/17 1:51/1 1:52/18 1:56/1 1:56/16 1:57/21 1:57/22 1:58/1
**ask [6]** 1:11/3 1:11/24 1:23/3 1:23/4 1:24/8 1:39/8
**asked [7]** 1:7/9 1:21/7 1:23/11 1:25/8 1:42/19 1:46/2 1:54/5
**asking [8]** 1:6/1 1:26/2 1:26/13 1:28/19 1:29/24 1:47/19 1:49/15 1:53/23
**aspect [4]** 1:31/15 1:34/24 1:37/25 1:42/9
**asserted [3]** 1:7/11 1:41/1 1:41/2
**associate [1]** 1:17/2
**assume [1]** 1:35/9
**assuming [1]** 1:6/7
**attach [1]** 1:3/2
**attached [4]** 1:11/10 1:15/19 1:16/25 1:46/7
**attempt [1]** 1:30/21
**attention [2]** 1:7/24 1:35/12

**attorney [1]** 1:6/3
**attorneys [1]** 1:7/1
**authority [3]** 1:3/20 1:55/7 1:55/10
**avoiding [1]** 1:45/4
**aware [1]** 1:54/16
**away [1]** 1:47/1

# B

**b [1]** 1:54/21
**back [13]** 1:6/12 1:18/3 1:18/4 1:26/16 1:28/16 1:30/1 1:32/8 1:43/19 1:43/20 1:45/22 1:48/11 1:51/6 1:52/19
**backed [1]** 1:27/15
**backlogs [1]** 1:27/16
**bad [2]** 1:24/12 1:49/1
**balance [2]** 1:17/7 1:24/21
**bankruptcy [1]** 1:8/23
**based [9]** 1:4/8 1:21/19 1:21/24 1:24/7 1:33/5 1:36/15 1:49/18 1:54/21 1:58/11
**basically [5]** 1:17/5 1:21/18 1:37/10 1:42/14 1:42/25
**basis [1]** 1:26/7
**BAYARD [1]** 1:1/20
**BCL [1]** 1:55/9
**be [75]**
**became [1]** 1:15/6
**because [41]** 1:3/5 1:3/17 1:5/7 1:5/16 1:6/21 1:7/7 1:9/13 1:10/3 1:14/21 1:19/2 1:19/5 1:19/10 1:22/13 1:24/3 1:24/13 1:24/21 1:26/13 1:26/20 1:27/7 1:27/14 1:27/16 1:30/25 1:36/2 1:37/4 1:47/14 1:47/19 1:48/15 1:48/21 1:48/23 1:48/25 1:49/7 1:50/16 1:50/17 1:51/1 1:51/2 1:51/13 1:52/3 1:52/20 1:53/14 1:55/2 1:55/7
**becomes [1]** 1:36/25
**becoming [1]** 1:25/16
**been [26]** 1:5/3 1:6/23 1:8/8 1:9/20 1:13/8 1:13/13 1:14/13 1:16/15 1:17/6 1:19/22 1:21/11 1:21/25 1:21/25 1:25/3 1:25/15 1:25/25 1:26/3 1:26/10 1:26/20 1:27/1 1:27/22 1:31/7 1:34/3 1:44/2 1:49/4 1:58/7
**before [13]** 1:1/16 1:15/14 1:17/22 1:17/25 1:20/9 1:37/5 1:37/22 1:38/8 1:43/22

1:44/1 1:47/15 1:47/22 1:49/23
**beginning [2]** 1:2/11 1:31/14
**behalf [17]** 1:4/20 1:5/11 1:12/25 1:18/21 1:27/9 1:35/8 1:35/14 1:35/15 1:35/17 1:44/5 1:46/9 1:46/10 1:48/3 1:51/23 1:52/22 1:56/15 1:56/22
**being [10]** 1:3/12 1:8/9 1:10/17 1:30/19 1:30/23 1:37/21 1:45/7 1:45/23 1:47/13 1:54/3
**believe [16]** 1:4/23 1:10/7 1:10/18 1:13/1 1:15/15 1:16/1 1:17/24 1:18/17 1:18/24 1:20/10 1:20/16 1:25/20 1:30/21 1:38/4 1:38/19 1:45/14
**believed [2]** 1:6/9 1:20/10
**belonged [3]** 1:29/9 1:29/13 1:45/18
**belongs [1]** 1:45/17
**benefit [1]** 1:19/12
**besides [1]** 1:37/24
**best [1]** 1:42/11
**better [1]** 1:34/5
**between [8]** 1:5/12 1:11/17 1:12/3 1:13/15 1:16/20 1:17/1 1:26/21 1:52/5
**beyond [1]** 1:16/6
**bill [2]** 1:21/16 1:53/24
**billed [1]** 1:25/3
**billing [1]** 1:25/6
**binding [1]** 1:36/16
**bit [4]** 1:13/2 1:15/12 1:17/9 1:18/7
**blah [3]** 1:48/2 1:48/2 1:48/2
**block [1]** 1:10/8
**board [1]** 1:57/23
**boils [1]** 1:22/20
**Bonnie [2]** 1:59/21 1:59/22
**both [7]** 1:2/24 1:3/19 1:5/8 1:26/13 1:33/3 1:34/6 1:54/9
**bottom [1]** 1:27/20
**breach [7]** 1:27/9 1:52/17 1:53/1 1:53/2 1:53/9 1:53/11 1:57/2
**breached [1]** 1:10/4
**brief [2]** 1:52/7 1:55/4
**briefed [1]** 1:30/20
**briefing [3]** 1:11/7 1:38/11 1:56/9
**briefly [3]** 1:8/16 1:15/6 1:55/23
**bring [1]** 1:7/24
**Brisbois [1]** 1:9/5

**B**

brought [2] 1:47/13 1:49/13
Bufford [1] 1:8/24
bunch [1] 1:41/19
busy [1] 1:34/10
bylaws [16] 1:11/15 1:35/2 1:35/5 1:35/12 1:37/8 1:37/12 1:37/13 1:37/15 1:39/18 1:45/10 1:45/23 1:46/4 1:46/12 1:49/19 1:53/3 1:58/13

**C**

c [2] 1:2/9 1:40/7
C.A [1] 1:1/5
calculated [1] 1:24/6
calculation [2] 1:19/1 1:23/15
calculations [2] 1:24/18 1:25/17
called [2] 1:8/8 1:32/4
came [5] 1:8/25 1:15/12 1:28/17 1:30/5 1:42/23
can [28] 1:7/14 1:7/16 1:7/20 1:8/16 1:9/24 1:13/23 1:16/19 1:20/5 1:22/22 1:23/2 1:23/3 1:23/13 1:24/8 1:24/8 1:25/12 1:26/23 1:27/19 1:28/19 1:35/13 1:35/15 1:40/24 1:43/3 1:44/6 1:45/19 1:47/15 1:49/20 1:55/23 1:57/1
can't [4] 1:14/24 1:17/24 1:19/6 1:43/2
cannot [3] 1:5/7 1:52/15 1:53/1
cap [3] 1:12/24 1:13/6 1:17/6
capacity [1] 1:52/6
capped [1] 1:6/18
care [2] 1:50/20 1:58/19
carefully [1] 1:30/25
case [64]
cases [3] 1:30/10 1:31/17 1:54/11
causal [2] 1:52/4 1:52/9
causes [1] 1:37/10
causing [1] 1:21/9
cautious [1] 1:30/19
certain [2] 1:17/6 1:32/6
certainly [6] 1:15/2 1:20/17 1:27/22 1:30/7 1:33/10 1:37/3
Certificate [2] 1:53/4 1:59/16
certify [1] 1:59/18
CFC [1] 1:1/5
challenge [3] 1:40/24

1:46/17 1:50/24
Chancery [10] 1:29/9 1:29/17 1:30/8 1:32/11 1:33/21 1:42/24 1:46/1 1:48/8 1:49/5 1:49/8
change [1] 1:24/10
Chapman [1] 1:8/21
check [1] 1:10/8
chop [1] 1:53/22
circle [1] 1:45/22
Circuit [4] 1:41/18 1:41/23 1:49/22 1:54/12
circumstance [1] 1:44/22
circumstances [2] 1:36/4 1:58/21
citations [1] 1:35/10
cite [5] 1:3/20 1:7/22 1:7/23 1:32/20 1:35/20
cited [1] 1:55/4
citing [1] 1:42/18
City [1] 1:55/3
Civil [2] 1:41/13 1:46/24
claim [28] 1:5/12 1:14/24 1:20/25 1:21/3 1:21/5 1:31/7 1:39/1 1:43/5 1:44/7 1:46/19 1:47/13 1:47/16 1:47/17 1:49/22 1:50/7 1:50/7 1:50/19 1:51/22 1:53/2 1:53/22 1:53/23 1:54/8 1:54/24 1:56/21 1:57/9 1:57/10 1:57/16 1:58/16
Claim 1 [3] 1:56/21 1:57/9 1:57/16
claims [10] 1:9/14 1:33/8 1:40/10 1:40/14 1:40/15 1:41/2 1:41/4 1:41/8 1:47/14 1:53/18
claw [2] 1:43/20 1:51/6
clear [4] 1:19/11 1:27/21 1:33/1 1:36/25
clearly [4] 1:37/3 1:37/4 1:37/16 1:38/2
clerk [1] 1:34/8
clerked [1] 1:8/23
clerkship [1] 1:8/25
client [3] 1:3/24 1:10/5 1:18/4
clients [4] 1:3/10 1:4/10 1:5/4 1:5/24
closed [1] 1:38/14
COLIN [3] 1:2/4 1:2/23 1:41/1
colleague [2] 1:40/21 1:58/8
collect [1] 1:25/18
collective [1] 1:10/19
collects [2] 1:35/22 1:44/21
colloquy [1] 1:54/3
COLM [1] 1:1/16

some [3] 1:12/23 1:30/1 1:32/8
comes [1] 1:53/21
coming [3] 1:7/4 1:37/10 1:43/23
commenced [1] 1:2/11
comment [1] 1:54/2
commission [1] 1:52/11
commit [1] 1:19/23
committee [1] 1:18/5
company [3] 1:49/15 1:51/6 1:58/10
complaint [32] 1:3/3 1:6/4 1:6/8 1:9/25 1:10/2 1:10/3 1:10/6 1:10/10 1:22/4 1:22/5 1:22/7 1:22/8 1:25/23 1:26/4 1:26/13 1:28/22 1:29/24 1:31/8 1:31/19 1:32/2 1:33/9 1:33/12 1:35/3 1:35/11 1:35/16 1:37/1 1:42/16 1:45/12 1:45/24 1:46/8 1:53/1 1:57/8
completely [1] 1:35/3
complicated [1] 1:24/21
concepts [1] 1:49/10
concerns [1] 1:22/11
concluded [1] 1:59/13
conditions [2] 1:12/13 1:52/23
conduct [1] 1:56/21
confer [1] 1:32/7
Confidential [1] 1:10/23
confidentiality [2] 1:27/4 1:27/9
confidentially [1] 1:11/4
confirm [1] 1:34/2
confused [1] 1:56/11
connection [3] 1:18/19 1:52/4 1:52/9
CONNOLLY [1] 1:1/16
consider [2] 1:41/22 1:42/6
content [1] 1:14/3
contention [1] 1:56/24
contested [1] 1:32/24
continue [3] 1:15/25 1:17/16 1:52/8
CONTINUED [1] 1:2/1
continuing [2] 1:5/23 1:5/24
continuous [1] 1:54/24
contract [3] 1:36/15 1:51/16 1:51/21
contract-based [1] 1:36/15
contractor [1] 1:49/20
contractual [1]

1:45/21
contradictory [1] 1:45/9
contrary [3] 1:35/18 1:44/16 1:49/5
contribution [3] 1:19/4 1:21/3 1:21/4
controversy [10] 1:3/5 1:7/5 1:8/1 1:29/21 1:30/4 1:32/23 1:33/14 1:34/5 1:34/18 1:43/11
convenience [1] 1:43/25
conversations [1] 1:10/13
converting [1] 1:10/5
convincing [1] 1:33/1
corporate [5] 1:52/6 1:52/13 1:52/16 1:56/7 1:56/25
corporation [13] 1:35/8 1:35/14 1:35/25 1:36/3 1:44/15 1:44/16 1:46/10 1:48/1 1:51/23 1:56/15 1:56/22 1:58/4 1:58/5
correct [20] 1:5/21 1:5/22 1:6/5 1:6/11 1:6/13 1:7/22 1:10/11 1:13/20 1:13/21 1:17/13 1:22/1 1:26/4 1:26/5 1:26/14 1:40/17 1:46/21 1:50/14 1:51/8 1:51/13 1:57/6
cost [1] 1:17/9
costs [4] 1:7/9 1:15/25 1:31/1 1:49/12
could [19] 1:3/18 1:5/8 1:5/9 1:6/23 1:6/23 1:6/24 1:10/20 1:21/8 1:25/19 1:27/12 1:31/12 1:36/3 1:43/20 1:48/13 1:48/20 1:48/21 1:51/16 1:52/1 1:58/15
couldn't [3] 1:31/11 1:44/12 1:54/19
counsel [14] 1:1/23 1:2/5 1:4/18 1:10/24 1:15/5 1:15/7 1:17/2 1:17/4 1:18/23 1:23/21 1:23/22 1:25/18 1:42/18 1:42/22
counsel's [1] 1:15/4
count [3] 1:28/2 1:52/25 1:57/18
Count 1 [2] 1:52/25 1:57/18
counterclaim [10] 1:37/7 1:38/24 1:39/2 1:39/12 1:39/14 1:39/22 1:40/19 1:41/5 1:47/8 1:47/12
counterclaims [4] 1:41/3 1:41/9 1:41/10

1:46/25
County [2] 1:27/14 1:45/8
couple [4] 1:9/1 1:32/7 1:33/12 1:54/2
course [2] 1:37/20 1:45/2
court [54] 1:1/1 1:1/16 1:7/23 1:8/23 1:9/24 1:13/3 1:16/19 1:20/6 1:21/5 1:21/6 1:27/14 1:29/17 1:30/9 1:31/23 1:32/11 1:32/22 1:32/25 1:33/18 1:33/21 1:35/21 1:37/2 1:37/15 1:37/17 1:38/3 1:39/12 1:41/24 1:42/13 1:42/24 1:43/1 1:43/9 1:43/22 1:45/3 1:45/4 1:45/14 1:46/1 1:47/4 1:47/15 1:48/8 1:49/5 1:49/8 1:49/8 1:49/23 1:49/24 1:50/8 1:50/10 1:55/2 1:55/9 1:55/12 1:55/12 1:55/15 1:56/6 1:59/16 1:59/22 1:59/23
Court's [1] 1:41/23
courtroom [1] 1:2/11
courts [9] 1:44/11 1:44/18 1:44/25 1:45/1 1:49/10 1:52/3 1:52/3 1:58/19 1:58/20
cover [1] 1:10/18
covered [1] 1:33/8
covering [2] 1:28/9 1:49/12
covers [1] 1:25/24
Covid [2] 1:27/1 1:27/16
creating [2] 1:5/11 1:14/25
criminal [3] 1:51/3 1:51/10 1:51/12
cured [1] 1:43/23
currently [1] 1:9/6
cv [1] 1:1/5

**D**

D [3] 1:2/9 1:8/7 1:8/7
damages [1] 1:54/14
Dart [2] 1:32/20 1:34/17
date [5] 1:6/3 1:6/8 1:7/7 1:17/12 1:18/13
dated [1] 1:25/24
day [1] 1:46/3
days [1] 1:38/17
deal [1] 1:51/22
December [3] 1:4/24 1:9/9 1:24/22
December 2021 [1] 1:24/22
December 21 [1] 1:4/24

**D**

December 31st [1] 1:9/9

decide [3] 1:55/2 1:55/13 1:58/21

decided [2] 1:36/1 1:47/18

decision [3] 1:14/22 1:43/10 1:46/3

declaration [1] 1:6/2

declaratory [9] 1:36/22 1:36/24 1:37/25 1:45/16 1:54/4 1:54/6 1:54/10 1:54/21 1:54/22

decline [4] 1:36/7 1:36/21 1:41/20 1:55/15

declining [2] 1:37/18 1:45/15

defeat [4] 1:8/2 1:41/5 1:41/7 1:51/16

defeats [1] 1:50/22

defendant [7] 1:1/7 1:2/5 1:32/22 1:40/8 1:46/25 1:47/22 1:49/14

defendant's [1] 1:32/23

defendants [15] 1:5/1 1:5/5 1:11/18 1:12/4 1:12/20 1:12/25 1:16/21 1:18/22 1:35/17 1:37/5 1:37/5 1:38/9 1:41/4 1:51/3 1:53/17

defended [1] 1:10/14

defending [1] 1:48/2

defense [7] 1:4/13 1:5/6 1:10/19 1:13/19 1:17/17 1:18/22 1:49/13

definitive [1] 1:18/2

definitively [1] 1:25/12

DEIRDRE [2] 1:2/4 1:2/22

DELAWARE [24] 1:1/2 1:1/14 1:19/6 1:21/5 1:30/6 1:35/22 1:36/2 1:36/2 1:37/10 1:40/6 1:42/24 1:43/3 1:43/4 1:44/1 1:44/21 1:49/6 1:49/8 1:52/3 1:52/3 1:55/10 1:55/11 1:55/12 1:58/8 1:58/8

delay [1] 1:27/4

delayed [1] 1:27/1

demand [3] 1:3/24 1:19/8 1:19/15

demanding [1] 1:3/3

denied [2] 1:54/7 1:59/7

deny [2] 1:32/19 1:34/15

depending [2] 1:32/8

1:51/15

depends [1] 1:38/21

depositions [1] 1:38/5

deprived [1] 1:26/10

describe [1] 1:8/16

determination [2] 1:33/3 1:46/2

determine [1] 1:51/10

determined [1] 1:31/14

developed [1] 1:38/5

developing [1] 1:38/13

did [29] 1:5/14 1:8/20 1:9/7 1:10/13 1:12/23 1:14/19 1:15/9 1:16/6 1:17/15 1:17/22 1:17/23 1:18/9 1:18/12 1:18/15 1:18/17 1:18/20 1:19/11 1:20/10 1:20/15 1:25/20 1:26/17 1:27/2 1:28/18 1:30/25 1:31/6 1:42/17 1:54/7 1:54/18 1:57/24

didn't [15] 1:3/20 1:14/8 1:15/2 1:15/3 1:15/3 1:18/2 1:19/5 1:20/17 1:20/24 1:21/7 1:27/6 1:29/13 1:29/16 1:31/5 1:32/20

differ [1] 1:41/16

differences [1] 1:42/19

different [10] 1:9/1 1:26/21 1:27/2 1:37/15 1:37/16 1:41/19 1:47/12 1:49/7 1:49/16 1:53/10

differently [1] 1:32/12

DIRECT [1] 1:8/12

directly [3] 1:7/23 1:32/14 1:44/16

director [4] 1:49/15 1:56/8 1:56/17 1:58/4

directors [3] 1:48/16 1:49/12 1:57/23

disagree [1] 1:34/11

discounting [1] 1:25/10

discovery [2] 1:26/25 1:38/14

discretion [3] 1:36/21 1:45/15 1:54/14

discretionary [3] 1:36/12 1:41/24 1:54/12

discuss [1] 1:18/5

discussed [1] 1:10/15

discussion [3] 1:12/18 1:14/23 1:58/7

discussions [2] 1:17/24 1:30/24

dismiss [7] 1:26/23 1:34/21 1:34/25 1:36/6 1:39/1 1:42/12 1:46/7

dismissed [1] 1:35/1

disposition [4] 1:48/4 1:48/10 1:48/23 1:50/17

dispute [2] 1:22/3 1:36/23

distinction [1] 1:47/11

distinguish [2] 1:54/12 1:54/13

DISTRICT [7] 1:1/1 1:1/2 1:1/16 1:49/24 1:55/5 1:55/6 1:59/23

disturbing [1] 1:33/20

diversity [2] 1:3/4 1:29/20

DJ [5] 1:36/11 1:36/18 1:54/12 1:54/13 1:54/14

do [41] 1:2/19 1:3/9 1:5/13 1:5/14 1:9/21 1:11/19 1:11/25 1:12/12 1:13/5 1:13/12 1:14/12 1:14/22 1:15/3 1:15/17 1:16/17 1:16/18 1:18/9 1:19/15 1:24/5 1:25/3 1:25/19 1:27/18 1:29/12 1:30/10 1:32/18 1:34/10 1:35/20 1:38/17 1:39/5 1:39/11 1:40/2 1:40/4 1:42/2 1:46/8 1:47/7 1:47/15 1:51/21 1:51/21 1:52/3 1:54/11 1:58/17

document [7] 1:9/22 1:9/24 1:11/9 1:11/21 1:12/1 1:16/17 1:46/6

documents [1] 1:13/7

does [9] 1:38/21 1:38/23 1:39/1 1:39/11 1:39/13 1:39/14 1:50/7 1:50/19 1:50/20

doesn't [3] 1:22/5 1:30/7 1:47/24

doing [4] 1:8/15 1:14/15 1:23/15 1:26/22

dollars [4] 1:6/10 1:6/15 1:19/9 1:19/16

don't [49] 1:3/4 1:3/21 1:4/4 1:5/13 1:6/21 1:6/21 1:7/18 1:7/22 1:7/23 1:10/23 1:11/1 1:11/9 1:12/5 1:15/11 1:16/2 1:20/16 1:23/19 1:24/2 1:24/9 1:25/16 1:30/21 1:32/19 1:34/11 1:35/4 1:35/22 1:35/23 1:36/15 1:36/16 1:36/18 1:36/23 1:38/2 1:39/3 1:40/3 1:40/20 1:41/21 1:42/25 1:44/4 1:44/6 1:47/10 1:47/10 1:50/25 1:51/22 1:51/25 1:51/25

1:53/12 1:55/14 1:56/7 1:57/7 1:58/4

done [1] 1:42/11

double [2] 1:10/8 1:19/6

double-check [1] 1:10/8

doubt [2] 1:47/1 1:47/7

down [7] 1:22/20 1:27/5 1:42/23 1:43/4 1:48/17 1:52/21 1:58/16

dragged [1] 1:19/12

draw [1] 1:47/11

due [1] 1:48/10

duly [1] 1:8/9

duplicative [2] 1:45/5 1:45/9

duties [4] 1:10/4 1:57/3 1:57/15 1:57/20

duty [10] 1:10/4 1:52/15 1:52/17 1:53/1 1:53/2 1:53/10 1:53/11 1:53/12 1:53/14 1:56/3

**E**

e [7] 1:2/9 1:2/9 1:8/7 1:16/20 1:17/1 1:17/12 1:18/3

e-mail [3] 1:17/1 1:17/12 1:18/3

e-mails [1] 1:16/20

earlier [5] 1:13/8 1:18/7 1:37/12 1:44/8 1:53/21

early [1] 1:19/17

Eastern [2] 1:55/5 1:55/6

effect [2] 1:37/22 1:45/10

either [6] 1:29/16 1:31/6 1:32/5 1:32/21 1:49/19 1:58/3

ELLIOTT [23] 1:1/6 1:2/3 1:2/19 1:5/9 1:5/12 1:9/2 1:9/7 1:9/10 1:9/11 1:13/18 1:14/13 1:14/19 1:18/9 1:35/15 1:35/18 1:35/19 1:40/15 1:42/24 1:43/20 1:46/10 1:53/4 1:56/20 1:58/10

else [6] 1:5/17 1:30/22 1:45/20 1:53/9 1:55/21 1:58/13

emanates [1] 1:51/16

employed [1] 1:20/12

employee [4] 1:49/15 1:56/3 1:56/16 1:57/2

employees [4] 1:4/10 1:19/13 1:48/17 1:49/13

employer [5] 1:56/3 1:56/8 1:57/3 1:58/6

1:58/23

employment [2] 1:21/6 1:57/21

end [2] 1:9/8 1:30/20

ended [1] 1:21/13

engaged [2] 1:56/20 1:56/21

Engel [5] 1:15/4 1:17/4 1:17/4 1:18/1 1:18/4

enrichment [1] 1:15/1

entered [3] 1:4/11 1:20/16 1:51/17

entertain [2] 1:7/15 1:33/16

entire [1] 1:50/21

entitled [20] 1:6/2 1:6/9 1:6/9 1:37/7 1:40/9 1:44/17 1:46/11 1:47/23 1:48/3 1:48/12 1:48/14 1:48/16 1:48/20 1:48/22 1:49/2 1:49/18 1:51/11 1:53/17 1:54/22 1:58/24

entity [1] 1:53/15

equity [2] 1:52/20 1:52/23

Eric [1] 1:15/5

Eric Milby [1] 1:15/5

especially [1] 1:34/1

ESQ [5] 1:1/21 1:1/21 1:2/3 1:2/4 1:2/4

essentially [1] 1:31/24

establish [1] 1:7/25

established [1] 1:52/9

estimate [1] 1:4/17

estimates [1] 1:15/13

even [10] 1:3/20 1:7/22 1:7/23 1:28/2 1:29/4 1:30/12 1:33/5 1:36/15 1:43/18 1:52/1

ever [1] 1:16/6

every [1] 1:32/7

everything [5] 1:5/17 1:25/18 1:27/5 1:42/10 1:58/17

evidence [11] 1:3/9 1:7/13 1:7/14 1:7/17 1:7/20 1:7/25 1:33/1 1:33/2 1:33/4 1:33/13 1:34/17

evidentiary [1] 1:43/17

eviscerates [1] 1:51/13

exactly [3] 1:42/23 1:43/7 1:52/25

EXAMINATION [1] 1:8/12

exceed [2] 1:23/14 1:24/16

exceeded [2] 1:23/9 1:33/9

exceeds [1] 1:29/21

## E

excess [3] 1:5/3 1:20/8 1:54/8
excessive [1] 1:13/2
excuse [3] 1:9/9 1:49/14 1:55/5
exercise [3] 1:36/7 1:36/10 1:56/25
exercising [5] 1:45/14 1:52/22 1:53/3 1:53/15 1:54/14
exhausted [1] 1:4/19
exhibit [4] 1:9/17 1:9/21 1:11/9 1:16/16
Exhibit 1 [1] 1:9/21
Exhibit 2 [1] 1:16/16
exhibits [1] 1:38/12
exist [1] 1:39/15
existed [1] 1:34/18
existing [1] 1:4/23
expand [1] 1:48/17
expect [4] 1:6/15 1:22/14 1:26/17 1:34/3
expectation [2] 1:33/7 1:33/18
expected [1] 1:24/14
expecting [1] 1:26/6
expedited [2] 1:29/9 1:46/1
expended [1] 1:17/7
expenses [4] 1:14/12 1:17/17 1:17/19 1:48/1
expensive [1] 1:26/23
experience [3] 1:8/17 1:27/15 1:32/13
explain [2] 1:3/2 1:20/5
explicitly [2] 1:15/20 1:15/21
extension [1] 1:38/18
extra [1] 1:30/19

## F

F [2] 1:1/16 1:8/7
F.3d [1] 1:50/2
face [1] 1:7/5
fact [4] 1:4/8 1:27/11 1:34/2 1:49/14
factor [3] 1:37/17 1:43/9 1:50/25
factors [6] 1:41/19 1:42/3 1:43/8 1:45/3 1:45/13 1:50/25
facts [3] 1:24/3 1:24/9 1:24/9
factual [2] 1:24/2 1:38/5
failed [1] 1:56/14
fairly [1] 1:27/15
faith [1] 1:47/21
fall [1] 1:48/18
false [1] 1:51/20
familiarity [1] 1:33/19
Farm [1] 1:55/6
fashion [2] 1:6/24 1:49/20

favor [1] 1:46/23
FCRR [1] 1:59/22
February [14] 1:4/21 1:10/7 1:10/8 1:17/13 1:17/15 1:17/20 1:17/21 1:25/4 1:25/4 1:26/3 1:26/18 1:27/23 1:28/9 1:42/12
February 2 [5] 1:4/21 1:17/13 1:17/15 1:17/20 1:17/21
February 5 [1] 1:10/8
February-March [1] 1:28/9
federal [3] 1:3/21 1:32/22 1:33/19
feeling [1] 1:39/25
fees [45] 1:4/13 1:5/25 1:6/1 1:6/3 1:6/16 1:6/22 1:7/1 1:7/10 1:13/13 1:13/19 1:14/12 1:14/19 1:14/20 1:17/17 1:17/19 1:21/12 1:22/5 1:22/8 1:22/9 1:22/9 1:22/14 1:22/19 1:23/9 1:23/13 1:24/16 1:24/23 1:24/24 1:25/8 1:25/24 1:26/2 1:26/7 1:26/14 1:26/18 1:26/19 1:27/2 1:27/22 1:28/20 1:29/6 1:29/24 1:29/25 1:30/1 1:33/8 1:33/13 1:34/19 1:51/11
fellow [1] 1:8/19
felt [3] 1:6/8 1:10/16 1:29/8
fencing [2] 1:42/9 1:43/6
fiduciary [16] 1:9/15 1:10/4 1:52/15 1:52/17 1:52/18 1:53/1 1:53/2 1:53/11 1:53/14 1:56/3 1:56/8 1:56/25 1:57/3 1:57/14 1:57/20 1:58/5
fight [3] 1:20/18 1:20/24 1:27/12
fighting [3] 1:23/16 1:23/18 1:32/9
figure [3] 1:19/1 1:22/13 1:40/5
figuring [1] 1:16/25
file [2] 1:23/24 1:29/24
filed [19] 1:6/4 1:6/8 1:7/8 1:9/25 1:10/6 1:10/9 1:10/10 1:22/7 1:25/23 1:26/4 1:26/13 1:27/9 1:31/19 1:35/16 1:37/6 1:38/9 1:38/16 1:42/18 1:46/1
files [1] 1:10/5
filing [3] 1:28/22 1:33/11 1:43/4
fill [1] 1:52/20

final [5] 1:47/14 1:48/4 1:48/9 1:48/23 1:50/17
find [7] 1:31/6 1:31/12 1:31/13 1:32/17 1:36/4 1:44/12 1:54/19
fine [3] 1:12/9 1:14/7 1:14/9
firm [7] 1:9/13 1:12/21 1:53/7 1:57/21 1:57/22 1:57/23 1:58/2
firms [2] 1:9/1 1:44/5
first [15] 1:2/14 1:3/17 1:8/6 1:8/9 1:12/2 1:12/14 1:12/15 1:15/5 1:16/24 1:23/7 1:34/25 1:44/25 1:51/14 1:55/3 1:57/25
FitTracks [2] 1:32/3 1:53/20
five [3] 1:8/21 1:11/17 1:12/3
five years [1] 1:8/21
focus [3] 1:10/15 1:10/16 1:52/4
folks [1] 1:49/1
follow [1] 1:29/18
following [1] 1:8/25
follows [2] 1:8/10 1:17/1
foregoing [1] 1:59/18
forget [1] 1:25/7
formula [1] 1:24/5
forthcoming [1] 1:15/22
forthrightly [1] 1:25/19
forum [1] 1:58/17
forward [2] 1:26/7 1:27/6
found [2] 1:9/2 1:51/6
four [1] 1:44/3
Francis [1] 1:15/6
frankly [4] 1:3/14 1:15/2 1:36/9 1:58/18
friend [1] 1:54/3
front [4] 1:27/7 1:27/12 1:30/8 1:43/1
fronts [1] 1:20/25
fully [1] 1:38/4
further [1] 1:31/23
future [12] 1:6/3 1:7/9 1:7/10 1:22/8 1:22/9 1:22/14 1:26/14 1:28/20 1:28/20 1:29/6 1:33/8 1:34/19

## G

G [1] 1:2/9
gamesmanship [1] 1:7/19
gap [1] 1:52/20
gave [1] 1:28/23
general [4] 1:10/24 1:15/4 1:17/2 1:17/4
generally [1] 1:12/8

Georgetown [1] 1:8/19
get [18] 1:3/17 1:5/8 1:5/8 1:7/18 1:15/13 1:18/15 1:19/6 1:19/11 1:20/15 1:21/5 1:23/17 1:26/6 1:31/18 1:31/18 1:35/23 1:35/23 1:48/24 1:50/13
getting [3] 1:24/11 1:40/14 1:47/6
gist [2] 1:10/2 1:10/3
give [1] 1:22/22
given [5] 1:19/12 1:29/10 1:34/18 1:53/3 1:53/15
go [23] 1:4/1 1:7/25 1:11/24 1:14/3 1:14/6 1:14/6 1:14/9 1:15/14 1:18/4 1:19/20 1:20/24 1:22/12 1:24/15 1:26/7 1:27/6 1:31/17 1:31/25 1:32/5 1:35/23 1:40/25 1:42/3 1:45/19 1:47/1
go-forward [1] 1:26/7
goes [1] 1:40/11
going [50] 1:2/19 1:4/1 1:4/9 1:4/20 1:4/22 1:6/16 1:6/22 1:6/25 1:7/14 1:7/15 1:7/19 1:10/14 1:16/24 1:17/8 1:17/18 1:19/14 1:19/22 1:20/14 1:22/9 1:22/16 1:22/18 1:23/13 1:24/9 1:26/18 1:27/8 1:28/16 1:30/1 1:32/18 1:32/18 1:33/15 1:33/16 1:33/17 1:34/12 1:34/13 1:34/15 1:34/16 1:38/19 1:39/5 1:39/22 1:43/15 1:43/16 1:43/19 1:44/8 1:44/23 1:48/25 1:49/2 1:50/18 1:52/23 1:56/9 1:59/8
GOLDEN [3] 1:1/21 1:2/15 1:3/16
Goldman [1] 1:33/17
gone [2] 1:39/23 1:44/4
good [6] 1:2/13 1:2/16 1:2/17 1:2/21 1:8/14 1:47/21
got [7] 1:3/1 1:29/17 1:35/4 1:37/14 1:38/18 1:43/13 1:53/13
gotten [2] 1:25/9 1:31/20
graduated [1] 1:8/18
grand [1] 1:22/6
granted [2] 1:43/18 1:46/20
Great [1] 1:2/25
GREENLEAF [24] 1:1/6 1:2/3 1:2/19

1:5/9 1:5/12 1:9/2 1:9/7 1:9/10 1:9/11 1:11/15 1:13/18 1:14/13 1:14/19 1:18/9 1:35/15 1:35/18 1:35/19 1:40/16 1:42/24 1:43/20 1:46/10 1:53/4 1:56/20 1:58/11
group [1] 1:48/19
guess [8] 1:2/14 1:2/15 1:3/14 1:6/25 1:24/1 1:30/22 1:40/22 1:54/25
guessing [1] 1:19/17
guide [1] 1:55/10
guilty [1] 1:51/6

## H

H [1] 1:8/7
hac [1] 1:2/24
had [57] 1:4/17 1:4/19 1:5/3 1:5/10 1:5/17 1:7/10 1:9/14 1:10/3 1:10/12 1:12/18 1:13/13 1:14/13 1:14/20 1:14/21 1:14/22 1:14/23 1:15/3 1:15/5 1:15/5 1:15/12 1:15/13 1:17/6 1:17/23 1:18/3 1:18/4 1:18/21 1:19/3 1:19/4 1:19/10 1:19/13 1:20/7 1:20/10 1:21/11 1:21/24 1:21/25 1:25/3 1:25/6 1:25/8 1:25/12 1:25/15 1:25/24 1:26/3 1:26/10 1:27/1 1:27/5 1:27/5 1:31/7 1:31/19 1:32/13 1:34/1 1:34/2 1:34/4 1:34/5 1:34/8 1:44/5 1:51/17 1:54/3
had had [1] 1:15/5
hadn't [2] 1:25/5 1:25/9
half [1] 1:44/3
hand [1] 1:8/4
handed [1] 1:16/15
happen [3] 1:6/18 1:27/8 1:47/8
happened [3] 1:9/10 1:15/24 1:42/17
happens [1] 1:31/18
hard [5] 1:3/6 1:3/22 1:4/2 1:29/22 1:30/4
harder [1] 1:57/5
hardly [1] 1:43/21
has [11] 1:9/20 1:13/3 1:14/24 1:16/15 1:31/22 1:36/21 1:41/3 1:49/4 1:51/6 1:55/17 1:58/17
have [95]
haven't [1] 1:41/10
having [5] 1:3/22 1:4/1 1:8/8 1:29/22

**H**

**having... [1]** 1:44/10
**Hayes [2]** 1:16/22 1:17/5
**he [2]** 1:25/8 1:40/24
**he's [1]** 1:47/23
**head [4]** 1:15/11 1:26/15 1:34/3 1:54/17
**hear [4]** 1:3/8 1:34/20 1:46/15 1:48/25
**Hearing [1]** 1:1/12
**helped [1]** 1:9/2
**here [29]** 1:2/20 1:5/2 1:8/25 1:20/18 1:20/25 1:27/21 1:28/17 1:29/2 1:29/12 1:29/14 1:30/3 1:36/5 1:37/6 1:37/10 1:38/1 1:38/8 1:42/11 1:43/3 1:43/10 1:43/18 1:43/21 1:43/24 1:52/14 1:53/6 1:53/17 1:53/18 1:54/2 1:58/7 1:58/17
**Here's [1]** 1:24/5
**hereby [1]** 1:59/18
**him [2]** 1:16/24 1:18/5
**hinting [1]** 1:31/16
**his [2]** 1:18/4 1:25/7
**historic [5]** 1:21/12 1:22/5 1:26/14 1:28/16 1:34/2
**historical [1]** 1:26/14
**hmm [1]** 1:47/3
**hold [2]** 1:11/12 1:15/8
**honestly [1]** 1:25/19
**Honor [62]**
**HONORABLE [1]** 1:1/16
**hope [2]** 1:35/10 1:46/5
**Horn [9]** 1:4/17 1:5/5 1:12/21 1:15/10 1:16/23 1:21/20 1:21/22 1:25/6 1:28/8
**Horn Williamson [5]** 1:4/17 1:5/5 1:15/10 1:16/23 1:25/6
**how [22]** 1:3/2 1:3/18 1:3/23 1:4/5 1:6/21 1:7/4 1:8/14 1:10/14 1:11/19 1:13/10 1:13/13 1:13/13 1:14/12 1:19/19 1:22/13 1:24/5 1:28/11 1:28/19 1:31/16 1:48/5 1:49/10 1:52/13

**I**

**I [213]**
**I'd [7]** 1:14/15 1:17/23 1:19/17 1:27/25 1:29/16 1:34/25 1:39/24
**I'll [5]** 1:7/13 1:14/6 1:39/8 1:57/4 1:59/5
**I'm [39]** 1:3/12 1:3/17 1:3/22 1:4/1 1:6/20 1:6/25 1:7/14 1:7/15 1:7/16 1:8/15 1:11/14 1:11/14 1:14/3 1:14/4 1:14/15 1:19/17 1:19/25 1:20/21 1:22/13 1:22/22 1:22/25 1:27/24 1:29/22 1:32/18 1:32/18 1:33/15 1:33/15 1:34/12 1:34/16 1:36/9 1:36/10 1:37/5 1:41/17 1:43/3 1:47/6 1:49/25 1:56/11 1:56/11 1:56/23
**I've [4]** 1:9/20 1:16/15 1:27/15 1:29/17
**idea [1]** 1:45/23
**identical [1]** 1:49/10
**identified [1]** 1:34/6
**III [1]** 1:1/21
**impact [1]** 1:41/8
**impaneled [1]** 1:43/16
**important [1]** 1:37/17
**impose [2]** 1:33/15 1:52/23
**impossible [1]** 1:53/5
**impression [2]** 1:44/25 1:55/3
**inaccurate [1]** 1:35/4
**inadvertence [1]** 1:35/9
**inclined [2]** 1:36/9 1:36/11
**includes [1]** 1:40/8
**inconsistent [1]** 1:38/1
**inconvenience [1]** 1:44/7
**incorporated [1]** 1:58/11
**Incorporation [1]** 1:53/4
**increase [3]** 1:13/6 1:16/6 1:16/8
**increased [3]** 1:4/14 1:13/4 1:16/1
**incredibly [1]** 1:3/24
**incur [4]** 1:5/24 1:6/1 1:6/16 1:22/19
**incurred [23]** 1:4/13 1:6/17 1:6/22 1:7/1 1:7/10 1:13/13 1:13/19 1:14/13 1:14/20 1:17/17 1:21/12 1:21/25 1:22/10 1:23/8 1:25/25 1:26/3 1:28/21 1:29/5 1:29/24 1:31/2 1:48/2 1:49/12 1:49/13
**indemnification [26]** 1:35/7 1:35/23 1:37/8 1:39/2 1:39/17 1:40/9 1:46/11 1:46/18 1:47/12 1:47/14 1:47/16 1:47/20 1:48/3

1:48/6 1:48/12 1:48/14 1:48/16 1:48/21 1:49/2 1:49/7 1:50/8 1:50/10 1:50/19 1:51/18 1:55/8 1:58/24
**independently [1]** 1:17/24
**indicate [1]** 1:14/19
**indicated [2]** 1:20/14 1:23/22
**indicating [2]** 1:13/18 1:17/5
**individuals [4]** 1:43/15 1:44/15 1:58/15 1:58/22
**inevitably [1]** 1:31/10
**infer [1]** 1:33/6
**informed [1]** 1:4/21
**initial [1]** 1:48/19
**initially [1]** 1:4/12
**insisting [1]** 1:3/4
**instance [3]** 1:39/20 1:46/22 1:47/4
**instead [1]** 1:34/8
**intended [1]** 1:17/16
**intentional [2]** 1:35/10 1:46/5
**intentionally [1]** 1:3/15
**interest [1]** 1:44/9
**interests [4]** 1:35/19 1:35/24 1:35/25 1:44/16
**interpret [1]** 1:37/15
**interpretation [6]** 1:37/8 1:37/11 1:39/17 1:45/10 1:55/8 1:58/13
**introduce [1]** 1:9/16
**Investors [1]** 1:52/12
**invoice [12]** 1:4/24 1:4/25 1:15/10 1:15/18 1:15/19 1:21/20 1:21/24 1:24/22 1:24/23 1:25/23 1:28/9 1:31/21
**invoices [4]** 1:15/22 1:16/25 1:25/13 1:25/21
**involved [2]** 1:20/15 1:44/5
**ironically [1]** 1:36/1
**irreconcilable [1]** 1:42/19
**is [134]**
**isn't [7]** 1:22/20 1:31/6 1:31/11 1:48/5 1:52/19 1:52/21 1:55/11
**issue [26]** 1:3/9 1:5/11 1:15/1 1:15/7 1:18/12 1:18/24 1:18/25 1:23/23 1:25/10 1:25/17 1:28/16 1:28/17 1:29/11 1:30/23 1:31/6 1:35/2 1:37/23 1:43/15

1:44/10 1:44/14 1:44/24 1:45/21 1:46/17 1:49/23 1:50/4 1:50/10
**issues [10]** 1:14/23 1:19/1 1:23/24 1:26/25 1:29/8 1:37/21 1:37/23 1:45/4 1:45/7 1:47/20
**it [124]**
**it's [45]** 1:3/19 1:6/20 1:7/21 1:7/21 1:11/6 1:11/10 1:12/2 1:16/20 1:19/7 1:19/17 1:21/19 1:21/24 1:22/8 1:22/16 1:24/1 1:24/2 1:24/2 1:24/20 1:30/7 1:30/8 1:32/3 1:32/4 1:35/9 1:35/10 1:36/3 1:37/21 1:38/14 1:40/15 1:41/24 1:41/25 1:42/8 1:45/17 1:46/8 1:48/7 1:49/15 1:52/21 1:54/8 1:54/9 1:54/23 1:54/24 1:55/4 1:55/12 1:57/16 1:58/11 1:58/17
**its [6]** 1:38/14 1:40/15 1:43/8 1:45/14 1:47/17 1:55/10
**itself [3]** 1:11/9 1:47/25 1:48/23

**J**

**January [18]** 1:4/16 1:4/25 1:9/8 1:13/17 1:14/11 1:14/14 1:15/9 1:15/23 1:18/8 1:20/7 1:21/13 1:21/16 1:24/15 1:24/24 1:25/25 1:26/19 1:28/3 1:33/13
**January 11 [5]** 1:4/16 1:15/9 1:15/23 1:18/8 1:20/7
**January 2022 [2]** 1:21/16 1:26/19
**January 22 [1]** 1:4/25
**January 31 [1]** 1:25/25
**January 31st [1]** 1:9/8
**Johnson [1]** 1:55/5
**Journal [1]** 1:55/6
**judge [20]** 1:1/16 1:8/23 1:35/20 1:36/17 1:37/6 1:37/16 1:38/19 1:38/21 1:39/25 1:42/11 1:43/6 1:43/18 1:44/1 1:44/8 1:44/23 1:45/2 1:45/8 1:45/23 1:58/18 1:59/1
**judgment [22]** 1:36/22 1:36/24 1:37/25 1:38/10 1:38/23 1:39/11 1:39/21 1:40/8 1:40/14 1:41/4 1:41/5 1:41/7

1:41/10 1:45/16 1:46/19 1:46/25 1:47/5 1:54/4 1:54/6 1:54/10 1:54/21 1:54/22
**jump [1]** 1:42/7
**jurisdiction [17]** 1:3/4 1:23/18 1:23/20 1:29/20 1:29/21 1:30/11 1:34/16 1:36/7 1:36/10 1:36/12 1:36/22 1:37/18 1:41/20 1:42/15 1:45/15 1:55/15 1:59/8
**jurisdictional [3]** 1:29/11 1:31/9 1:31/13
**jury [1]** 1:43/15
**just [49]** 1:3/1 1:3/7 1:3/9 1:3/12 1:3/21 1:3/22 1:4/1 1:4/5 1:6/7 1:8/16 1:10/20 1:11/20 1:11/24 1:12/7 1:12/7 1:14/6 1:14/15 1:16/2 1:16/19 1:18/15 1:19/24 1:20/9 1:22/6 1:22/22 1:23/21 1:24/3 1:27/18 1:28/23 1:34/9 1:34/13 1:38/9 1:38/25 1:40/5 1:40/12 1:43/2 1:46/25 1:47/4 1:49/25 1:51/19 1:53/10 1:53/13 1:53/19 1:53/21 1:54/1 1:54/7 1:54/8 1:54/9 1:54/14 1:57/11
**justify [1]** 1:51/23

**K**

**keep [1]** 1:45/25
**Kelly [2]** 1:50/1 1:50/2
**key [2]** 1:35/5 1:35/6
**kind [5]** 1:36/5 1:41/25 1:44/10 1:44/24 1:54/19
**King [1]** 1:1/14
**KINSELLA [1]** 1:1/3
**knew [1]** 1:17/18
**know [63]**
**knowledge [1]** 1:11/11
**knows [1]** 1:40/22

**L**

**L [2]** 1:8/7 1:8/7
**lack [2]** 1:23/18 1:32/13
**lacking [1]** 1:55/9
**LADIG [7]** 1:1/21 1:2/15 1:23/21 1:39/5 1:40/4 1:40/23 1:57/8
**Ladig's [1]** 1:56/24
**lag [1]** 1:25/6
**language [10]** 1:15/20 1:32/14 1:35/5 1:35/6 1:41/23 1:48/9 1:48/22 1:49/19 1:51/23 1:56/13

## L

**Larry [1]** 1:18/3
**Last [1]** 1:8/7
**late [3]** 1:15/12 1:19/20 1:19/20
**later [6]** 1:4/14 1:9/12 1:18/12 1:18/16 1:29/2 1:29/11
**law [25]** 1:3/21 1:8/18 1:8/20 1:9/1 1:19/6 1:30/6 1:31/1 1:31/12 1:33/19 1:36/2 1:36/16 1:36/17 1:39/4 1:40/6 1:44/5 1:44/14 1:48/8 1:49/6 1:49/22 1:56/4 1:56/9 1:57/1 1:58/8 1:58/8 1:58/12
**Lawrence [1]** 1:17/1
**lawsuit [2]** 1:4/9 1:9/14
**lawyer [10]** 1:3/18 1:3/23 1:4/3 1:4/5 1:16/22 1:23/5 1:25/7 1:25/16 1:30/15 1:56/2
**lawyers [2]** 1:30/2 1:33/17
**lay [1]** 1:42/11
**leading [1]** 1:9/1
**least [10]** 1:11/5 1:11/10 1:12/14 1:14/18 1:20/13 1:31/17 1:32/10 1:40/6 1:44/5 1:44/13
**leave [2]** 1:8/22 1:9/7
**left [8]** 1:9/10 1:9/11 1:9/13 1:9/13 1:10/3 1:16/25 1:17/8 1:24/21
**leftover [1]** 1:19/10
**legal [15]** 1:3/20 1:6/9 1:6/16 1:7/22 1:17/10 1:21/8 1:23/1 1:23/1 1:23/9 1:24/2 1:24/12 1:24/16 1:24/23 1:24/24 1:29/6
**length [1]** 1:53/13
**less [6]** 1:7/6 1:22/15 1:26/18 1:27/25 1:29/5 1:31/9
**let [8]** 1:14/6 1:23/4 1:26/16 1:41/16 1:42/7 1:48/11 1:52/19 1:55/1
**let's [12]** 1:2/14 1:11/24 1:15/8 1:24/15 1:34/20 1:39/4 1:39/10 1:39/21 1:40/23 1:46/16 1:46/23 1:53/9
**letter [16]** 1:3/2 1:4/16 1:5/15 1:13/17 1:14/11 1:14/14 1:15/9 1:15/15 1:15/21 1:15/23 1:18/8 1:18/17 1:18/20 1:19/25 1:20/6 1:20/7
**level [1]** 1:44/13
**Lewis [1]** 1:9/5
**liable [2]** 1:31/20

1:40/20
**lightly [2]** 1:30/12 1:31/6
**like [14]** 1:3/8 1:13/16 1:14/16 1:24/11 1:25/4 1:29/23 1:31/7 1:31/12 1:34/25 1:38/16 1:39/20 1:46/4 1:48/18 1:53/24
**limited [1]** 1:22/5
**limits [1]** 1:19/13
**line [1]** 1:27/20
**listen [1]** 1:29/16
**lists [1]** 1:41/18
**literally [2]** 1:50/25 1:58/23
**litigate [5]** 1:7/16 1:22/18 1:28/20 1:34/4 1:51/12
**litigated [2]** 1:7/21 1:47/5
**litigates [1]** 1:56/2
**litigating [3]** 1:30/1 1:44/2 1:44/7
**litigation [13]** 1:5/20 1:13/2 1:20/16 1:20/17 1:20/18 1:21/9 1:22/10 1:23/8 1:34/1 1:43/4 1:43/13 1:45/5 1:50/21
**litigious [3]** 1:3/25 1:13/3 1:30/2
**little [4]** 1:13/2 1:15/12 1:17/9 1:18/7
**live [1]** 1:44/1
**LLC [2]** 1:52/12 1:52/12
**LLM [1]** 1:8/20
**logic [1]** 1:51/1
**longer [1]** 1:17/18
**look [10]** 1:7/14 1:13/7 1:16/2 1:27/25 1:30/25 1:32/12 1:37/18 1:42/10 1:46/6 1:54/18
**looked [3]** 1:25/17 1:27/19 1:43/9
**looking [8]** 1:18/24 1:25/10 1:25/11 1:29/8 1:41/19 1:43/16 1:52/2 1:55/13
**looks [1]** 1:29/23
**lose [1]** 1:51/1
**lot [4]** 1:7/18 1:19/22 1:33/18 1:58/7
**lots [1]** 1:45/7
**love [2]** 1:29/16 1:39/24
**loyalty [4]** 1:10/4 1:53/10 1:53/12 1:53/14
**lull [1]** 1:26/21

## M

**M [1]** 1:2/4
**made [2]** 1:3/24 1:14/22

**mail [3]** 1:17/1 1:17/12 1:18/3
**mails [1]** 1:16/20
**main [1]** 1:2/20
**make [9]** 1:3/12 1:3/23 1:4/5 1:4/24 1:25/23 1:30/20 1:32/16 1:35/16 1:42/6
**making [1]** 1:49/1
**management [1]** 1:18/5
**mandatory [1]** 1:40/9
**manner [1]** 1:7/21
**many [5]** 1:6/21 1:13/13 1:14/12 1:33/25 1:38/5
**March [27]** 1:5/15 1:6/12 1:6/17 1:7/2 1:13/8 1:18/18 1:19/17 1:19/19 1:19/20 1:19/25 1:20/6 1:21/19 1:21/24 1:21/25 1:23/8 1:24/16 1:25/24 1:26/3 1:26/18 1:27/23 1:28/9 1:29/5 1:29/23 1:31/22 1:33/7 1:33/7 1:34/4
**March 2022 [1]** 1:29/5
**March 22 [1]** 1:33/7
**March 25 [3]** 1:19/25 1:20/6 1:31/22
**March 25th [1]** 1:19/19
**March 25th letter [1]** 1:5/15
**March 29 [4]** 1:26/3 1:27/23 1:29/23 1:33/7
**March 7 [6]** 1:21/19 1:21/24 1:21/25 1:23/8 1:24/16 1:25/24
**MARK [2]** 1:2/3 1:2/22
**marked [3]** 1:9/21 1:10/22 1:16/15
**material [1]** 1:46/4
**math [1]** 1:28/23
**matter [13]** 1:3/25 1:6/10 1:30/8 1:30/11 1:35/1 1:36/8 1:36/10 1:45/16 1:47/23 1:50/5 1:51/1 1:56/5 1:56/16
**matters [1]** 1:49/6
**mature [1]** 1:43/22
**may [12]** 1:4/3 1:8/11 1:9/16 1:13/8 1:13/22 1:16/9 1:28/8 1:29/15 1:31/3 1:34/13 1:37/3 1:57/11
**May 20 [1]** 1:37/3
**maybe [6]** 1:3/21 1:17/9 1:47/3 1:47/4 1:53/18 1:57/17
**me [32]** 1:3/2 1:3/9 1:3/19 1:3/25 1:4/5 1:6/6 1:6/14 1:7/18 1:9/9 1:22/7 1:22/11 1:22/22 1:23/4 1:24/5

1:24/8 1:26/16 1:28/23 1:30/3 1:30/8 1:33/6 1:33/20 1:38/4 1:41/16 1:41/22 1:42/5 1:42/7 1:43/2 1:48/11 1:49/14 1:52/19 1:55/5 1:59/2
**mean [25]** 1:3/14 1:3/19 1:12/15 1:14/3 1:17/23 1:23/4 1:27/14 1:27/17 1:29/15 1:30/14 1:31/5 1:32/19 1:32/21 1:33/22 1:36/5 1:39/16 1:41/23 1:41/24 1:47/24 1:48/5 1:50/1 1:50/12 1:54/4 1:54/18 1:54/20
**meaning [3]** 1:21/2 1:21/2 1:21/4
**means [4]** 1:25/22 1:26/12 1:48/10 1:48/13
**meet [1]** 1:32/7
**members [1]** 1:57/22
**memory [3]** 1:14/15 1:19/23 1:27/18
**merits [7]** 1:39/19 1:40/7 1:40/12 1:47/15 1:47/18 1:47/23 1:50/21
**meticulous [1]** 1:25/13
**Michael [2]** 1:16/21 1:17/5
**might [6]** 1:24/11 1:26/20 1:44/17 1:44/21 1:47/1 1:55/2
**Milby [1]** 1:15/5
**mind [2]** 1:27/23 1:45/25
**minimum [1]** 1:31/9
**misconduct [4]** 1:37/22 1:43/14 1:45/11 1:45/11
**misconduct.' [1]** 1:52/11
**misquoted [2]** 1:45/23 1:46/4
**missing [1]** 1:56/14
**mitigate [1]** 1:45/14
**money [1]** 1:51/7
**Montgomery [2]** 1:27/14 1:45/8
**months [5]** 1:9/12 1:27/14 1:30/12 1:32/7 1:47/5
**more [15]** 1:6/15 1:7/1 1:7/11 1:17/18 1:21/9 1:22/14 1:22/19 1:24/20 1:31/11 1:32/11 1:33/10 1:33/19 1:36/11 1:38/10 1:38/11
**morning [1]** 1:10/25
**most [2]** 1:2/23 1:37/17
**motion [24]** 1:1/12

1:7/16 1:8/2 1:23/17 1:26/22 1:32/19 1:33/16 1:34/15 1:34/20 1:34/25 1:36/6 1:38/10 1:38/16 1:38/20 1:38/23 1:39/11 1:41/5 1:41/7 1:42/12 1:46/1 1:46/7 1:46/19 1:56/10 1:59/7
**motions [1]** 1:38/15
**move [1]** 1:26/24
**moved [5]** 1:9/4 1:9/4 1:10/12 1:41/3 1:41/10
**Mr [1]** 1:25/6
**Mr. [28]** 1:2/15 1:2/15 1:3/16 1:8/14 1:9/20 1:10/21 1:11/1 1:12/7 1:16/15 1:16/22 1:17/12 1:18/1 1:18/4 1:18/24 1:20/1 1:23/2 1:23/21 1:23/22 1:24/6 1:27/6 1:31/16 1:33/17 1:39/5 1:40/4 1:40/22 1:40/23 1:56/24 1:57/8
**Mr. Engel [2]** 1:18/1 1:18/4
**Mr. Golden [2]** 1:2/15 1:3/16
**Mr. Goldman [1]** 1:33/17
**Mr. Hayes [1]** 1:16/22
**Mr. Ladig [6]** 1:2/15 1:23/21 1:39/5 1:40/4 1:40/23 1:57/8
**Mr. Ladig's [1]** 1:56/24
**Mr. O'Boyle [1]** 1:40/22
**Mr. Pileggi [5]** 1:18/24 1:20/1 1:23/22 1:24/6 1:27/6
**Mr. Tucker [1]** 1:17/12
**Mr. Zahralddin [8]** 1:8/14 1:9/20 1:10/21 1:11/1 1:12/7 1:16/15 1:23/2 1:31/16
**much [6]** 1:2/25 1:13/13 1:19/23 1:28/11 1:55/19 1:59/4
**my [22]** 1:2/22 1:3/10 1:3/15 1:3/17 1:4/9 1:5/4 1:10/1 1:11/10 1:15/11 1:15/15 1:24/25 1:27/15 1:33/18 1:34/8 1:40/21 1:53/25 1:54/3 1:54/14 1:54/17 1:57/3 1:58/6 1:59/19
**myself [1]** 1:9/25

## N

**N [2]** 1:2/9 1:8/7
**n.8 [1]** 1:50/2
**name [5]** 1:8/5 1:8/6 1:8/7 1:21/21 1:25/7

## N

**named [1]** 1:47/25
**nature [4]** 1:47/17 1:51/2 1:52/17 1:52/25
**necessarily [4]** 1:49/23 1:50/4 1:50/11 1:51/2
**necessary [1]** 1:52/10
**need [4]** 1:3/7 1:41/22 1:42/5 1:53/16
**needs [1]** 1:35/7
**neighborhood [1]** 1:22/16
**never [2]** 1:48/24 1:50/13
**new [1]** 1:42/21
**nexus [2]** 1:52/4 1:52/9
**no [34]** 1:1/5 1:3/25 1:6/17 1:6/20 1:12/15 1:13/8 1:13/8 1:15/19 1:15/19 1:16/7 1:16/7 1:16/7 1:17/9 1:17/18 1:17/23 1:17/23 1:18/11 1:25/4 1:25/5 1:25/12 1:29/10 1:35/13 1:35/15 1:36/18 1:38/25 1:40/11 1:40/11 1:41/4 1:47/10 1:47/10 1:48/7 1:55/19 1:58/14 1:59/3
**nods [1]** 1:26/15
**not [68]**
**noted [1]** 1:13/3
**notes [1]** 1:59/19
**November [4]** 1:13/10 1:13/11 1:13/12 1:16/4
**now [19]** 1:3/3 1:3/19 1:4/4 1:14/17 1:22/12 1:26/2 1:26/11 1:28/16 1:29/2 1:34/20 1:35/20 1:36/1 1:37/2 1:37/9 1:38/7 1:42/15 1:43/25 1:49/21 1:53/18
**number [3]** 1:19/2 1:42/7 1:42/8
**Number 7 [1]** 1:42/8

## O

**O [1]** 1:2/9
**O'BOYLE [4]** 1:2/4 1:2/24 1:40/22 1:41/1
**oath [2]** 1:4/4 1:8/9
**objection [4]** 1:10/24 1:11/1 1:12/5 1:13/1
**objections [1]** 1:26/22
**obligation [3]** 1:9/15 1:56/8 1:58/5
**obtain [1]** 1:51/5
**obviously [2]** 1:14/24 1:18/4
**occurred [1]** 1:42/11
**October [1]** 1:38/20
**October 9 [1]** 1:38/20
**odd [1]** 1:19/9
**off [6]** 1:14/15 1:14/25

1:15/11 1:27/18 1:54/16 1:59/12
**offered [1]** 1:10/18
**office [2]** 1:9/3 1:15/4
**officer [3]** 1:56/7 1:56/17 1:58/4
**officers [2]** 1:48/18 1:49/12
**official [4]** 1:18/6 1:18/6 1:52/5 1:59/22
**Oh [5]** 1:11/14 1:36/20 1:39/16 1:56/18 1:57/19
**okay [46]** 1:2/14 1:2/25 1:5/20 1:8/15 1:11/14 1:11/19 1:11/22 1:12/6 1:12/10 1:12/18 1:13/5 1:13/12 1:13/17 1:14/5 1:14/17 1:15/8 1:15/17 1:15/23 1:16/5 1:16/6 1:17/15 1:18/7 1:19/15 1:19/21 1:20/3 1:20/22 1:21/23 1:25/1 1:28/5 1:28/11 1:28/13 1:28/15 1:30/17 1:39/8 1:40/18 1:40/23 1:41/12 1:41/15 1:42/25 1:46/3 1:48/20 1:53/22 1:55/16 1:55/17 1:57/4 1:57/19
**omitted [2]** 1:35/5 1:35/9
**once [2]** 1:33/25 1:34/1
**one [19]** 1:11/12 1:12/14 1:16/8 1:20/25 1:20/25 1:27/12 1:29/7 1:30/4 1:30/22 1:33/23 1:34/24 1:35/13 1:35/20 1:38/15 1:44/13 1:50/4 1:50/5 1:53/25 1:54/24
**one's [2]** 1:12/15 1:52/5
**ongoing [1]** 1:5/21
**only [17]** 1:5/16 1:5/18 1:12/16 1:16/7 1:16/7 1:16/8 1:20/6 1:25/24 1:27/12 1:29/25 1:31/12 1:36/3 1:40/15 1:41/3 1:46/9 1:48/16 1:53/23
**opinion [5]** 1:36/11 1:42/8 1:43/7 1:44/12 1:44/20
**opinions [2]** 1:35/22 1:44/21
**opposition [1]** 1:52/7
**option [1]** 1:15/3
**order [5]** 1:3/15 1:27/10 1:32/2 1:53/16 1:56/25
**orders [1]** 1:31/23
**ordinarily [1]** 1:31/17
**ordinary [2]** 1:56/3

1:57/2
**other [32]** 1:12/12 1:15/1 1:18/22 1:21/8 1:21/12 1:21/15 1:23/12 1:24/8 1:24/9 1:25/13 1:25/15 1:25/20 1:26/25 1:27/16 1:29/13 1:32/14 1:33/1 1:38/20 1:39/14 1:45/20 1:46/21 1:49/20 1:50/5 1:50/21 1:50/25 1:52/18 1:52/22 1:53/18 1:54/2 1:55/12 1:55/18 1:56/4
**others [1]** 1:37/20
**otherwise [1]** 1:48/23
**ought [1]** 1:33/22
**our [24]** 1:8/22 1:10/1 1:10/4 1:10/16 1:10/18 1:15/6 1:16/22 1:16/24 1:23/21 1:23/22 1:25/7 1:25/18 1:34/24 1:36/6 1:38/21 1:41/2 1:41/4 1:41/7 1:42/11 1:42/12 1:46/7 1:52/6 1:54/7 1:55/4
**ourselves [1]** 1:16/20
**out [12]** 1:6/18 1:12/16 1:16/25 1:19/1 1:22/13 1:31/11 1:32/15 1:37/12 1:38/21 1:40/6 1:42/12 1:57/20
**outright [1]** 1:39/1
**outset [1]** 1:28/18
**outstanding [2]** 1:5/16 1:5/19
**over [18]** 1:9/4 1:9/4 1:15/14 1:16/24 1:16/25 1:20/25 1:21/2 1:24/15 1:24/22 1:25/16 1:25/16 1:30/22 1:32/11 1:34/16 1:36/7 1:36/10 1:42/15 1:59/8
**owed [2]** 1:5/4 1:22/6
**own [2]** 1:5/2 1:35/11

## P

**P [2]** 1:1/21 1:2/9
**P.A [1]** 1:1/20
**P.C [1]** 1:1/6
**p.m [3]** 1:1/11 1:2/12 1:59/13
**PA [4]** 1:4/9 1:5/6 1:12/20 1:13/19
**pace [1]** 1:31/19
**Page [1]** 1:52/6
**Page 17 [1]** 1:52/6
**pages [1]** 1:38/11
**paid [10]** 1:5/3 1:5/10 1:5/17 1:6/25 1:14/25 1:18/21 1:19/4 1:19/10 1:21/25 1:31/22
**paper [1]** 1:28/1

**papers [2]** 1:7/24 1:27/8
**paragraph [4]** 1:47/25 1:53/8 1:57/15 1:58/1
**Paragraph 122 [2]** 1:53/8 1:57/15
**paragraphs [2]** 1:35/3 1:38/11
**Paragraphs 12 [1]** 1:35/3
**paralegal [2]** 1:9/14 1:10/1
**parallel [4]** 1:37/2 1:37/4 1:37/16 1:50/3
**part [8]** 1:2/23 1:11/3 1:11/6 1:11/6 1:11/13 1:13/23 1:36/6 1:54/24
**partial [2]** 1:4/24 1:4/24
**parties [6]** 1:36/24 1:37/21 1:42/13 1:43/25 1:44/2 1:45/25
**parties' [1]** 1:45/11
**partner [1]** 1:9/6
**partners [2]** 1:9/13 1:10/1
**party [5]** 1:12/2 1:17/11 1:41/3 1:47/20 1:53/13
**pay [11]** 1:4/12 1:4/20 1:4/22 1:12/25 1:14/18 1:15/25 1:17/16 1:17/18 1:32/6 1:35/12 1:48/1
**paying [2]** 1:17/5 1:50/16
**payment [2]** 1:4/24 1:51/5
**payor [2]** 1:12/2 1:17/11
**pending [2]** 1:43/13 1:45/4
**Pennsylvania [57]** 1:4/14 1:4/18 1:10/22 1:16/21 1:21/6 1:22/10 1:22/18 1:23/9 1:30/2 1:35/16 1:35/21 1:36/4 1:36/17 1:37/6 1:37/14 1:37/23 1:38/4 1:39/3 1:39/12 1:40/19 1:41/13 1:42/14 1:42/21 1:43/1 1:43/3 1:43/14 1:43/19 1:43/22 1:44/2 1:44/6 1:44/7 1:44/10 1:44/12 1:44/14 1:44/14 1:44/18 1:44/25 1:45/1 1:45/8 1:45/17 1:46/16 1:46/24 1:50/10 1:55/2 1:55/7 1:56/1 1:56/2 1:56/4 1:56/5 1:57/1 1:58/10 1:58/11 1:58/12 1:58/12 1:58/15 1:58/19 1:58/20
**people [4]** 1:48/15

1:49/1 1:52/18 1:52/23
**percent [1]** 1:53/24
**period [3]** 1:24/19 1:28/10 1:29/14
**periods [1]** 1:27/17
**permitted [2]** 1:33/3 1:46/7
**person [3]** 1:48/3 1:48/12 1:51/11
**personal [2]** 1:35/24 1:53/19
**personally [1]** 1:30/7
**pertinent [1]** 1:19/2
**PETER [1]** 1:1/21
**petition [1]** 1:42/18
**phase [1]** 1:13/2
**phases [1]** 1:26/21
**phrase [1]** 1:35/8
**pike [1]** 1:30/1
**Pileggi [6]** 1:15/6 1:18/24 1:20/1 1:23/22 1:24/6 1:27/6
**place [1]** 1:51/14
**placed [1]** 1:15/21
**plaintiff [2]** 1:32/25 1:41/2
**plaintiffs [10]** 1:1/4 1:1/23 1:3/1 1:4/22 1:5/2 1:37/6 1:37/22 1:38/8 1:42/23 1:44/1
**plaintiffs' [6]** 1:9/21 1:16/16 1:33/5 1:33/25 1:35/2 1:35/11
**Please [3]** 1:2/13 1:8/4 1:25/16
**plus [4]** 1:29/1 1:32/13 1:32/14 1:54/14
**point [17]** 1:5/1 1:5/3 1:7/23 1:13/14 1:14/13 1:20/13 1:22/21 1:26/8 1:28/22 1:32/14 1:36/5 1:37/20 1:44/6 1:44/8 1:57/3 1:57/4 1:58/6
**pointed [1]** 1:37/12
**policy [1]** 1:44/18
**portion [1]** 1:57/7
**position [4]** 1:33/25 1:39/22 1:39/24 1:39/25
**possibly [3]** 1:28/19 1:38/20 1:43/20
**potentially [2]** 1:5/11 1:47/21
**power [1]** 1:53/15
**powers [6]** 1:52/10 1:52/14 1:52/16 1:52/22 1:53/3 1:56/25
**practice [2]** 1:33/19 1:38/21
**practices [1]** 1:39/12
**prayer [1]** 1:36/25
**precedential [1]** 1:36/15
**prejudging [1]** 1:7/17
**preliminary [2]** 1:13/1

**P**

**preliminary... [1]** 1:26/22
**premised [1]** 1:50/18
**preparation [1]** 1:18/19
**prepared [2]** 1:3/16 1:3/16
**preponderance [2]** 1:33/2 1:34/17
**present [2]** 1:27/19 1:33/3
**presented [2]** 1:25/13 1:25/21
**presume [1]** 1:14/8
**pretty [4]** 1:23/4 1:27/24 1:36/25 1:44/22
**prevail [3]** 1:40/13 1:40/18 1:47/9
**prevailed [3]** 1:39/10 1:39/21 1:41/6
**prevails [1]** 1:46/25
**preview [1]** 1:3/10
**primarily [1]** 1:56/2
**primary [1]** 1:16/22
**prior [6]** 1:17/15 1:23/22 1:26/3 1:26/24 1:30/10 1:47/18
**privilege [1]** 1:18/25
**pro [1]** 1:2/24
**probably [3]** 1:30/5 1:31/10 1:36/3
**problem [2]** 1:22/4 1:22/4
**procedural [4]** 1:39/4 1:42/9 1:43/6 1:46/16
**procedurally [1]** 1:40/12
**procedure [3]** 1:29/9 1:41/13 1:46/24
**proceed [2]** 1:11/20 1:41/9
**proceeded [1]** 1:31/19
**proceeding [11]** 1:32/3 1:36/25 1:37/3 1:37/17 1:43/21 1:46/2 1:48/10 1:50/2 1:52/5 1:53/20 1:59/20
**proceedings [5]** 1:2/11 1:31/24 1:32/1 1:32/12 1:59/13
**process [2]** 1:15/14 1:38/12
**produced [1]** 1:10/22
**professor [1]** 1:8/21
**promise [1]** 1:51/20
**proper [1]** 1:42/15
**properly [1]** 1:33/23
**properties [1]** 1:10/5
**protective [1]** 1:27/10
**protracted [1]** 1:26/23
**provide [2]** 1:17/9 1:47/25
**provided [1]** 1:9/20
**provisions [1]** 1:55/9

**public [2]** 1:44/9 1:44/18
**pull [1]** 1:30/22
**pulled [2]** 1:21/5 1:25/9
**pursuant [1]** 1:29/20
**pursue [3]** 1:20/14 1:21/8 1:21/10
**pursued [1]** 1:10/17
**pursuing [1]** 1:19/14
**put [7]** 1:7/13 1:7/13 1:7/20 1:7/25 1:15/20 1:19/8 1:33/9

**Q**

**question [11]** 1:24/3 1:24/8 1:39/9 1:44/18 1:47/19 1:49/16 1:49/17 1:50/8 1:50/9 1:50/18 1:57/5
**questioned [1]** 1:32/25
**questions [2]** 1:55/18 1:59/2
**quite [2]** 1:15/1 1:26/11
**quotations [1]** 1:35/11
**quote [4]** 1:50/3 1:51/24 1:52/9 1:56/14
**quoted [1]** 1:35/2
**quotes [1]** 1:35/4

**R**

**R [5]** 1:2/9 1:8/7 1:8/7 1:59/21 1:59/22
**R-A-F-A-E-L [1]** 1:8/7
**RAFAEL [3]** 1:1/3 1:8/6 1:8/8
**raise [2]** 1:8/4 1:10/20
**raised [1]** 1:44/8
**raises [2]** 1:36/5 1:47/20
**ran [1]** 1:45/25
**rare [1]** 1:19/7
**Rather [1]** 1:23/17
**reach [1]** 1:31/11
**read [4]** 1:35/15 1:35/17 1:50/24 1:57/11
**real [1]** 1:28/17
**reality [1]** 1:29/3
**really [15]** 1:3/6 1:3/22 1:6/18 1:27/18 1:33/22 1:34/7 1:34/9 1:34/10 1:38/21 1:44/19 1:45/17 1:49/17 1:53/16 1:56/5 1:58/18
**reason [12]** 1:21/8 1:26/17 1:28/18 1:35/9 1:47/7 1:48/15 1:49/14 1:55/11 1:55/14 1:56/4 1:58/14 1:58/16
**reasonable [2]** 1:23/5 1:33/6

**reasonably [2]** 1:34/3 1:48/2
**rebuttal [1]** 1:55/22
**recall [2]** 1:14/12 1:19/15
**received [1]** 1:42/13
**receiving [1]** 1:8/22
**recent [1]** 1:30/12
**recognize [3]** 1:9/21 1:16/17 1:49/9
**recollect [1]** 1:12/16
**recollection [3]** 1:12/12 1:15/17 1:24/25
**recommended [1]** 1:12/21
**record [9]** 1:8/5 1:11/3 1:11/6 1:11/13 1:13/24 1:19/25 1:38/5 1:43/21 1:59/12
**recovery [1]** 1:19/6
**redaction [1]** 1:15/14
**reference [2]** 1:25/4 1:25/23
**referenced [2]** 1:15/16 1:46/8
**referring [2]** 1:19/25 1:57/8
**refrain [1]** 1:21/7
**regard [2]** 1:35/13 1:35/20
**regarding [1]** 1:55/7
**regardless [2]** 1:40/9 1:56/22
**Reifer [2]** 1:41/18 1:43/7
**reimbursement [2]** 1:22/6 1:29/25
**reiterate [1]** 1:20/9
**rejected [1]** 1:49/4
**related [2]** 1:49/9 1:49/11
**relegating [1]** 1:45/16
**relevant [5]** 1:5/7 1:11/6 1:32/15 1:34/7 1:41/25
**relief [2]** 1:33/9 1:37/1
**remain [1]** 1:40/19
**remaining [1]** 1:46/19
**remand [5]** 1:8/2 1:23/17 1:32/19 1:34/16 1:59/7
**remanded [1]** 1:23/18
**remember [4]** 1:15/11 1:15/20 1:17/24 1:50/17
**removed [2]** 1:31/7 1:33/23
**removes [1]** 1:29/19
**reopened [1]** 1:34/1
**REPORTER [2]** 1:59/16 1:59/22
**reporting [1]** 1:18/3
**represent [1]** 1:3/18
**representing [2]** 1:4/18 1:12/19

**request [2]** 1:34/19 1:35/1
**requesting [2]** 1:18/8 1:36/6
**require [2]** 1:31/23 1:47/14
**required [2]** 1:49/3 1:50/3
**requires [1]** 1:50/21
**research [2]** 1:17/10 1:34/6
**resolution [5]** 1:47/3 1:49/22 1:50/4 1:50/6 1:51/10
**resolve [7]** 1:30/3 1:43/10 1:49/23 1:50/7 1:50/11 1:50/19 1:51/2
**resolved [1]** 1:6/24
**respect [3]** 1:15/24 1:46/18 1:55/1
**respond [2]** 1:38/17 1:55/23
**responding [2]** 1:38/19 1:56/24
**response [3]** 1:18/10 1:18/11 1:23/1
**responses [1]** 1:38/13
**responsive [1]** 1:3/12
**rest [1]** 1:5/5
**restraining [1]** 1:45/3
**restricted [1]** 1:19/5
**revisit [1]** 1:18/12
**revisited [1]** 1:12/23
**Richard [2]** 1:17/3 1:17/4
**RICHARDS [2]** 1:2/4 1:2/22
**Rick [1]** 1:15/4
**rid [1]** 1:40/14
**right [72]**
**risk [2]** 1:38/1 1:45/9
**RONALD [1]** 1:1/21
**roughly [3]** 1:13/15 1:17/7 1:19/9
**RPR [1]** 1:59/22
**rules [5]** 1:29/18 1:29/19 1:40/19 1:41/13 1:46/24
**ruling [4]** 1:31/18 1:31/20 1:42/13 1:43/23
**rulings [3]** 1:43/17 1:43/19 1:45/9
**run [1]** 1:41/21
**running [1]** 1:43/4

**S**

**s [2]** 1:2/9 1:59/21
**said [18]** 1:3/15 1:4/12 1:5/13 1:10/10 1:11/2 1:15/21 1:20/9 1:23/12 1:28/18 1:28/23 1:31/20 1:42/14 1:44/20 1:46/5 1:47/7 1:47/22 1:50/23 1:54/8

**sake [2]** 1:6/7 1:46/23
**same [10]** 1:31/25 1:37/21 1:37/21 1:37/21 1:37/23 1:39/8 1:47/19 1:48/6 1:55/13 1:58/1
**Samuel [1]** 1:8/23
**sanctions [3]** 1:7/16 1:33/15 1:33/16
**satellite [1]** 1:43/4
**satisfied [2]** 1:33/14 1:34/17
**say [21]** 1:7/21 1:20/19 1:21/10 1:22/5 1:27/18 1:33/17 1:35/13 1:35/22 1:37/24 1:39/4 1:39/10 1:39/21 1:45/20 1:47/3 1:49/19 1:53/6 1:53/22 1:54/12 1:54/25 1:55/22 1:56/13
**saying [7]** 1:6/17 1:6/20 1:7/5 1:23/19 1:39/21 1:52/21 1:53/10
**says [12]** 1:31/13 1:32/2 1:40/24 1:41/24 1:48/8 1:48/20 1:52/8 1:55/7 1:57/14 1:58/1 1:58/8 1:58/9
**scenario [1]** 1:42/25
**School [1]** 1:8/18
**SCHWEMLER [2]** 1:2/3 1:2/22
**scratch [1]** 1:28/1
**seated [3]** 1:2/13 1:8/11 1:34/13
**second [5]** 1:11/12 1:18/17 1:18/19 1:22/23 1:31/15
**secondary [1]** 1:14/25
**Section [4]** 1:46/12 1:48/4 1:48/13 1:48/14
**Section 1 [3]** 1:48/4 1:48/13 1:48/14
**Section VII [1]** 1:46/12
**Sections [1]** 1:46/12
**Sections 1 [1]** 1:46/12
**see [9]** 1:7/17 1:11/25 1:21/7 1:26/24 1:27/8 1:28/1 1:38/2 1:40/23 1:53/9
**seek [3]** 1:5/9 1:5/14 1:35/13
**seeking [4]** 1:35/6 1:37/11 1:37/15 1:39/1
**seeks [1]** 1:32/22
**seems [2]** 1:7/15 1:7/18
**seen [2]** 1:27/16 1:31/25
**send [1]** 1:18/17
**senior [1]** 1:8/19
**sense [2]** 1:49/11 1:50/13

**S**

**sensitive [2]**  1:30/23 1:33/24

**sent [9]**  1:4/17 1:5/16 1:13/17 1:14/11 1:14/14 1:15/14 1:18/3 1:18/8 1:19/15

**sentence [1]**  1:58/1

**separate [5]**  1:31/24 1:32/1 1:32/3 1:53/20 1:54/23

**September [1]**  1:1/11

**series [1]**  1:16/20

**setting [1]**  1:32/2

**settle [1]**  1:50/4

**settled [1]**  1:6/23

**several [1]**  1:9/13

**shall [1]**  1:48/1

**shareholders [1]**  1:57/22

**SHELLEY [1]**  1:1/3

**shopping [1]**  1:58/18

**shortly [1]**  1:9/5

**should [17]**  1:3/15 1:3/16 1:32/24 1:33/21 1:34/5 1:34/10 1:41/24 1:44/19 1:45/1 1:47/4 1:54/12 1:54/13 1:55/1 1:55/15 1:56/5 1:58/18 1:58/20

**shouldn't [3]**  1:6/15 1:34/4 1:49/3

**show [1]**  1:14/1

**side [2]**  1:23/12 1:32/6

**sides [3]**  1:3/20 1:33/3 1:34/6

**signature [1]**  1:10/8

**significantly [1]**  1:26/18

**simply [5]**  1:12/15 1:43/12 1:49/5 1:49/17 1:53/4

**since [3]**  1:6/17 1:7/2 1:23/8

**sir [1]**  1:34/13

**sit [1]**  1:27/21

**situation [1]**  1:58/25

**skirmish [1]**  1:27/5

**slight [1]**  1:38/18

**slowed [1]**  1:27/5

**small [1]**  1:27/2

**so [90]**

**some [21]**  1:6/10 1:6/24 1:9/15 1:14/18 1:15/1 1:17/10 1:17/23 1:19/9 1:24/17 1:25/10 1:26/11 1:26/25 1:27/1 1:27/2 1:29/10 1:35/9 1:48/15 1:49/20 1:53/18 1:53/19 1:59/1

**somebody [3]**  1:14/24 1:29/19 1:51/17

**somebody's [1]**  1:34/3

**somehow [1]**  1:21/5

**something [10]**

1:13/16 1:14/16 1:19/16 1:22/15 1:23/2 1:30/11 1:30/24 1:48/18 1:53/24 1:57/12

**sometime [6]**  1:10/7 1:13/8 1:18/17 1:19/17 1:21/13 1:24/15

**sometimes [2]**  1:48/16 1:48/17

**somewhat [1]**  1:41/23

**somewhere [1]**  1:22/16

**sorry [8]**  1:9/8 1:11/14 1:14/4 1:19/20 1:22/16 1:37/5 1:56/11 1:56/23

**sort [6]**  1:3/10 1:9/15 1:15/1 1:18/25 1:43/7 1:45/13

**Souder [3]**  1:35/21 1:36/1 1:44/20

**sought [4]**  1:5/18 1:20/6 1:20/7 1:31/8

**sounds [1]**  1:24/11

**source [1]**  1:14/25

**speak [2]**  1:15/3 1:15/4

**speaker [1]**  1:2/20

**speaking [4]**  1:2/23 1:13/15 1:18/23 1:56/1

**specifically [1]**  1:39/2

**spell [1]**  1:8/5

**spend [2]**  1:32/11 1:34/8

**spent [1]**  1:8/19

**splitting [1]**  1:37/9

**spoke [2]**  1:10/24 1:19/3

**Spring [1]**  1:55/3

**SR [1]**  1:52/12

**standard [2]**  1:33/2 1:34/7

**standards [1]**  1:7/22

**start [4]**  1:2/14 1:4/3 1:25/16 1:46/16

**state [11]**  1:8/4 1:37/2 1:37/4 1:37/16 1:38/3 1:39/12 1:42/13 1:45/4 1:47/3 1:49/23 1:50/8

**statement [1]**  1:50/24

**STATES [3]**  1:1/1 1:1/16 1:8/23

**status [4]**  1:38/6 1:56/22 1:57/21 1:57/22

**statutory [2]**  1:47/23 1:52/21

**stay [1]**  1:42/19

**stayed [3]**  1:27/11 1:33/24 1:42/21

**stealing [1]**  1:58/23

**stenographic [1]**  1:59/19

**stepping [1]**  1:52/20

**Stevard [1]**  1:52/12

**still [6]**  1:5/4 1:14/17 1:25/9 1:32/17 1:39/14 1:57/2

**stipulate [2]**  1:23/12 1:23/13

**straight [1]**  1:7/5

**Street [1]**  1:1/14

**stuff [2]**  1:54/19 1:55/14

**subject [2]**  1:4/23 1:30/11

**submit [4]**  1:12/8 1:15/23 1:32/5 1:43/11

**submitted [3]**  1:11/3 1:15/18 1:31/21

**substantial [1]**  1:45/15

**substantively [1]**  1:48/5

**successful [1]**  1:40/7

**such [3]**  1:36/23 1:46/24 1:48/10

**sue [1]**  1:43/3

**sued [4]**  1:9/12 1:42/24 1:43/2 1:58/15

**suggest [1]**  1:29/4

**summarize [2]**  1:11/20 1:12/8

**summary [14]**  1:38/10 1:38/23 1:39/11 1:39/21 1:40/8 1:40/14 1:41/3 1:41/5 1:41/7 1:41/10 1:46/2 1:46/19 1:46/25 1:47/5

**Superior [1]**  1:35/21

**support [1]**  1:17/9

**suppose [1]**  1:46/23

**supposedly [1]**  1:42/22

**Supreme [2]**  1:7/23 1:49/8

**sure [11]**  1:3/12 1:4/7 1:9/18 1:27/24 1:36/20 1:41/12 1:41/17 1:42/4 1:42/6 1:55/25 1:56/12

**surprised [1]**  1:44/23

**swallow [1]**  1:30/4

**swallows [1]**  1:48/23

**sworn [1]**  1:8/9

**system [1]**  1:27/14

**T**

**take [11]**  1:30/11 1:31/5 1:34/16 1:39/22 1:39/24 1:40/1 1:50/19 1:54/15 1:57/4 1:59/5 1:59/8

**taken [1]**  1:58/18

**talk [2]**  1:34/25 1:49/10

**talked [2]**  1:18/7 1:31/13

**talking [8]**  1:10/21 1:16/24 1:20/19 1:20/21 1:21/11 1:24/6 1:29/2 1:53/20

**tapped [1]**  1:12/16

**Teasdale [29]**  1:4/10 1:4/11 1:4/20 1:4/21 1:5/4 1:5/10 1:5/12 1:5/13 1:5/17 1:9/4 1:9/12 1:10/11 1:10/12 1:10/14 1:10/23 1:11/17 1:12/3 1:12/13 1:12/19 1:12/24 1:13/5 1:14/18 1:14/21 1:17/3 1:17/16 1:18/20 1:19/3 1:20/12 1:22/1

**Teasdale's [1]**  1:15/25

**tell [8]**  1:4/5 1:7/13 1:9/24 1:16/19 1:18/20 1:25/12 1:41/22 1:42/5

**telling [4]**  1:3/25 1:6/6 1:6/14 1:30/3

**terms [2]**  1:12/13 1:24/4

**terrible [1]**  1:10/17

**test [2]**  1:32/20 1:49/21

**testified [1]**  1:8/9

**testify [4]**  1:3/10 1:3/16 1:3/17 1:23/2

**testifying [1]**  1:11/2

**testimony [1]**  1:33/6

**than [17]**  1:7/1 1:7/6 1:7/11 1:13/9 1:22/15 1:22/15 1:22/19 1:24/21 1:26/19 1:27/25 1:29/5 1:31/9 1:33/10 1:36/14 1:38/10 1:38/11 1:47/12

**Thank [19]**  1:2/25 1:8/11 1:12/6 1:12/10 1:16/12 1:16/13 1:20/3 1:34/14 1:34/22 1:34/23 1:46/13 1:46/14 1:55/19 1:55/20 1:59/1 1:59/3 1:59/5 1:59/9 1:59/11

**that [287]**

**that's [47]**  1:3/15 1:5/7 1:6/12 1:11/8 1:11/22 1:12/9 1:13/23 1:14/7 1:14/9 1:15/15 1:22/3 1:22/4 1:22/11 1:24/25 1:25/5 1:25/24 1:30/4 1:30/20 1:32/1 1:32/15 1:33/22 1:39/19 1:39/25 1:42/1 1:42/22 1:43/1 1:43/11 1:43/16 1:45/11 1:47/6 1:52/3 1:52/6 1:52/11 1:53/7 1:53/10 1:53/16 1:53/19 1:53/21 1:53/25 1:54/18 1:55/6 1:56/9 1:56/14 1:57/1 1:57/18 1:57/25 1:58/6

**their [27]**  1:4/13 1:4/20 1:5/2 1:5/11 1:9/2 1:10/24 1:16/1 1:37/8 1:37/9 1:39/17

1:40/14 1:40/15 1:41/2 1:41/5 1:41/6 1:41/8 1:41/9 1:42/18 1:44/5 1:44/16 1:53/1 1:56/3 1:56/22 1:57/21 1:57/21 1:57/22 1:58/23

**them [10]**  1:4/11 1:4/18 1:14/23 1:15/12 1:21/25 1:32/12 1:37/9 1:41/22 1:49/3 1:49/10

**then [29]**  1:2/18 1:4/23 1:5/1 1:5/19 1:8/18 1:8/25 1:9/4 1:15/6 1:20/5 1:20/18 1:21/5 1:23/16 1:25/18 1:26/24 1:27/4 1:27/21 1:28/15 1:32/6 1:32/7 1:32/7 1:32/25 1:37/14 1:38/20 1:41/9 1:50/16 1:50/19 1:52/8 1:52/23 1:55/1

**then-existing [1]**  1:4/23

**there [51]**  1:5/3 1:8/20 1:8/20 1:9/3 1:12/23 1:13/2 1:14/17 1:15/8 1:15/19 1:15/21 1:16/7 1:16/8 1:17/7 1:18/11 1:19/20 1:21/1 1:21/2 1:23/1 1:24/21 1:25/7 1:25/9 1:27/1 1:27/6 1:27/17 1:29/9 1:29/10 1:30/21 1:31/6 1:31/11 1:31/11 1:32/15 1:33/18 1:35/15 1:37/2 1:37/3 1:37/20 1:38/3 1:38/21 1:41/4 1:44/9 1:45/7 1:45/8 1:47/3 1:52/4 1:52/19 1:52/21 1:53/18 1:53/19 1:55/11 1:56/2 1:58/14

**there's [21]**  1:6/15 1:7/18 1:7/22 1:8/1 1:19/22 1:24/1 1:25/4 1:30/3 1:30/21 1:36/23 1:38/1 1:38/15 1:38/20 1:43/15 1:43/16 1:44/23 1:45/2 1:54/9 1:54/13 1:58/7 1:58/16

**thereabouts [1]**  1:10/9

**thereafter [1]**  1:42/17

**therefore [4]**  1:29/11 1:33/11 1:41/6 1:47/19

**these [16]**  1:5/14 1:10/17 1:35/17 1:36/4 1:42/13 1:43/14 1:45/3 1:45/10 1:45/25 1:49/1 1:52/22 1:52/23 1:57/14 1:57/20 1:58/14 1:58/22

**they [91]**

**they'd [1]**  1:19/12

**they're [15]**  1:2/24

**T**

**they're... [14]** 1:6/2 1:6/16 1:17/5 1:31/20 1:37/7 1:38/25 1:49/1 1:49/2 1:49/11 1:51/6 1:52/2 1:54/23 1:56/19 1:58/16

**they've [6]** 1:6/25 1:7/1 1:7/11 1:33/23 1:44/4 1:44/4

**thing [4]** 1:5/7 1:12/16 1:19/7 1:48/6

**things [3]** 1:18/5 1:54/2 1:54/23

**think [47]** 1:9/12 1:9/14 1:11/8 1:11/10 1:12/15 1:13/3 1:13/7 1:13/15 1:14/1 1:15/11 1:15/13 1:18/4 1:19/9 1:21/18 1:22/3 1:22/25 1:24/2 1:24/17 1:28/19 1:29/7 1:29/13 1:30/5 1:30/13 1:30/19 1:31/15 1:32/19 1:33/5 1:33/21 1:34/17 1:36/23 1:38/2 1:38/12 1:41/22 1:42/2 1:42/5 1:42/8 1:43/7 1:44/6 1:44/9 1:44/24 1:45/5 1:46/8 1:46/22 1:47/11 1:49/25 1:50/23 1:55/14

**thinking [1]** 1:11/14

**third [7]** 1:12/2 1:17/11 1:41/18 1:41/23 1:49/22 1:53/13 1:54/11

**third-party [2]** 1:12/2 1:17/11

**this [86]**

**Thomas [1]** 1:17/3

**those [13]** 1:12/13 1:18/25 1:19/6 1:22/14 1:24/18 1:29/25 1:31/1 1:32/10 1:32/11 1:35/4 1:42/3 1:45/13 1:46/3

**though [2]** 1:17/22 1:57/16

**thought [4]** 1:11/12 1:13/1 1:32/15 1:57/9

**thousand [2]** 1:6/10 1:19/9

**three [3]** 1:9/25 1:30/12 1:44/5

**three months [1]** 1:30/12

**through [6]** 1:15/14 1:24/16 1:31/25 1:41/21 1:42/3 1:44/4

**time [32]** 1:3/6 1:3/22 1:4/2 1:4/9 1:4/16 1:5/15 1:6/22 1:12/18 1:12/23 1:13/12 1:14/17 1:14/21 1:15/9 1:20/12 1:22/7 1:23/23 1:24/19 1:26/11

1:26/12 1:27/17 1:28/9 1:29/11 1:29/12 1:29/22 1:31/8 1:32/11 1:34/9 1:34/18 1:49/4 1:49/4 1:49/4 1:59/9

**timeline [1]** 1:16/2

**times [1]** 1:27/3

**timing [1]** 1:42/10

**today [2]** 1:2/23 1:27/21

**together [2]** 1:19/8 1:25/9

**told [5]** 1:14/12 1:20/11 1:24/3 1:24/5 1:43/2

**too [2]** 1:23/22 1:54/19

**took [2]** 1:8/22 1:25/2

**top [2]** 1:15/11 1:54/17

**total [3]** 1:22/14 1:28/13 1:28/14

**totaling [1]** 1:33/13

**touched [1]** 1:45/5

**toward [1]** 1:45/14

**transcript [1]** 1:59/19

**transition [1]** 1:42/22

**treat [1]** 1:30/6

**tried [1]** 1:25/18

**true [1]** 1:59/18

**try [3]** 1:18/15 1:19/22 1:23/6

**trying [9]** 1:3/17 1:15/13 1:19/1 1:22/13 1:22/22 1:22/25 1:23/17 1:40/5 1:49/25

**Tucker [3]** 1:17/2 1:17/12 1:18/3

**Tuesday [1]** 1:1/11

**turn [1]** 1:46/11

**turns [1]** 1:55/9

**two [7]** 1:9/12 1:20/24 1:30/12 1:38/15 1:45/20 1:46/3 1:47/5

**two months [2]** 1:9/12 1:47/5

**type [1]** 1:43/6

**types [1]** 1:19/7

**U**

**U.S [1]** 1:59/23

**ultimate [1]** 1:36/21

**ultimately [1]** 1:49/18

**uncertainty [2]** 1:43/10 1:43/23

**under [29]** 1:4/4 1:8/9 1:17/10 1:19/6 1:30/6 1:32/19 1:36/2 1:36/22 1:37/8 1:39/12 1:39/17 1:40/6 1:40/6 1:40/19 1:41/13 1:43/21 1:44/14 1:45/15 1:47/25 1:48/3 1:48/13 1:48/14 1:48/21 1:49/21 1:55/9 1:56/4 1:57/1 1:58/21 1:59/5

**underlying [4]** 1:30/25 1:40/10 1:43/11 1:52/5

**understand [2]** 1:3/21 1:22/21

**understanding [2]** 1:3/6 1:29/22

**undisputed [1]** 1:33/12

**undue [1]** 1:34/9

**Unfortunately [1]** 1:41/14

**unique [2]** 1:44/22 1:51/2

**UNITED [3]** 1:1/1 1:1/16 1:8/23

**University [1]** 1:8/21

**unjust [1]** 1:14/25

**unless [5]** 1:35/14 1:52/16 1:53/2 1:55/17 1:59/1

**unlike [1]** 1:33/17

**unsatisfying [1]** 1:32/18

**until [5]** 1:15/4 1:18/2 1:29/10 1:47/5 1:51/9

**up [12]** 1:4/12 1:7/4 1:9/1 1:15/8 1:17/6 1:26/16 1:27/15 1:30/5 1:32/3 1:48/11 1:52/19 1:53/22

**upon [4]** 1:8/21 1:45/5 1:49/18 1:52/24

**us [12]** 1:8/21 1:10/15 1:12/22 1:19/13 1:20/11 1:20/13 1:21/7 1:23/22 1:25/13 1:25/21 1:32/10 1:46/9

**use [1]** 1:57/24

**used [2]** 1:52/10 1:52/14

**usually [1]** 1:15/12

**V**

**v [1]** 1:1/5

**venue [1]** 1:42/15

**versus [5]** 1:52/12 1:54/14 1:55/5 1:56/17 1:56/17

**very [17]** 1:2/25 1:3/19 1:19/7 1:19/11 1:19/11 1:26/23 1:26/23 1:27/2 1:30/2 1:30/2 1:32/12 1:32/17 1:38/4 1:46/4 1:52/1 1:55/19 1:59/3

**vice [1]** 1:2/24

**VII [1]** 1:46/12

**violated [1]** 1:9/15

**W**

**wait [2]** 1:47/5 1:51/9

**waiting [1]** 1:27/8

**waiving [1]** 1:18/25

**want [27]** 1:3/9 1:3/12 1:3/13 1:4/3

1:4/4 1:4/5 1:5/13 1:11/20 1:14/8 1:15/2 1:19/11 1:20/15 1:20/17 1:20/24 1:22/6 1:22/12 1:27/6 1:27/18 1:32/2 1:39/17 1:39/20 1:40/12 1:40/13 1:43/1 1:45/20 1:46/17 1:55/21

**wanted [5]** 1:10/15 1:13/18 1:14/22 1:46/3 1:54/1

**wants [2]** 1:11/2 1:38/2

**warned [1]** 1:25/15

**was [86]**

**wasn't [2]** 1:11/5 1:46/5

**way [11]** 1:21/18 1:30/6 1:31/1 1:32/20 1:35/15 1:38/15 1:44/22 1:46/4 1:52/2 1:53/10 1:58/3

**we [119]**

**we're [15]** 1:4/1 1:28/16 1:29/1 1:29/2 1:34/9 1:34/13 1:34/15 1:38/12 1:38/19 1:40/5 1:46/7 1:50/18 1:53/23 1:54/22 1:56/9

**we've [4]** 1:26/10 1:27/19 1:41/1 1:42/11

**Weaver [1]** 1:17/3

**weigh [1]** 1:46/22

**well [30]** 1:3/14 1:14/3 1:14/21 1:16/4 1:18/15 1:18/23 1:20/7 1:21/10 1:22/21 1:23/3 1:24/17 1:24/20 1:26/14 1:27/6 1:27/20 1:30/20 1:38/14 1:41/15 1:43/25 1:45/22 1:48/11 1:48/17 1:48/20 1:49/1 1:50/18 1:50/20 1:52/1 1:52/19 1:53/22 1:57/25

**went [5]** 1:8/18 1:8/20 1:16/4 1:19/1 1:27/13

**were [54]** 1:4/10 1:4/22 1:4/23 1:5/16 1:5/18 1:5/19 1:6/8 1:6/9 1:9/11 1:9/12 1:10/10 1:10/17 1:15/13 1:16/7 1:17/8 1:17/18 1:17/25 1:19/13 1:20/12 1:20/13 1:20/14 1:23/15 1:23/24 1:24/24 1:25/13 1:26/2 1:26/13 1:26/18 1:26/22 1:26/22 1:26/24 1:27/7 1:27/17 1:27/25 1:30/14 1:30/19 1:30/23 1:31/1 1:33/8 1:35/17 1:35/18

1:40/7 1:40/13 1:40/18 1:46/4 1:46/24 1:47/2 1:47/8 1:49/14 1:50/14 1:51/11 1:52/10 1:53/7 1:57/6

**what [71]**

**what's [6]** 1:16/25 1:24/19 1:32/8 1:33/12 1:33/20 1:56/13

**whatever [3]** 1:7/14 1:29/25 1:40/24

**when [32]** 1:7/9 1:7/10 1:7/11 1:9/7 1:10/6 1:10/9 1:12/18 1:12/23 1:13/5 1:14/13 1:19/3 1:19/15 1:20/7 1:20/19 1:21/10 1:23/15 1:24/6 1:25/22 1:26/4 1:28/2 1:28/19 1:32/13 1:32/22 1:32/24 1:33/12 1:36/15 1:37/4 1:41/19 1:41/25 1:42/23 1:48/8 1:56/20

**where [18]** 1:4/11 1:9/2 1:9/5 1:21/8 1:30/13 1:30/14 1:31/7 1:31/8 1:33/22 1:33/23 1:35/4 1:43/14 1:45/17 1:45/17 1:51/15 1:53/21 1:53/21 1:54/13

**Whereas [1]** 1:47/17

**whether [13]** 1:7/15 1:15/18 1:17/16 1:22/25 1:43/10 1:47/20 1:51/10 1:52/4 1:54/15 1:55/1 1:55/12 1:58/21 1:58/23

**which [32]** 1:3/3 1:4/17 1:5/13 1:7/21 1:9/5 1:12/1 1:12/21 1:15/1 1:19/9 1:23/12 1:26/22 1:32/20 1:35/21 1:35/22 1:36/4 1:36/5 1:36/12 1:37/12 1:40/7 1:41/10 1:42/14 1:43/19 1:44/13 1:46/6 1:47/12 1:47/13 1:49/1 1:50/22 1:51/3 1:54/4 1:56/21 1:58/22

**while [2]** 1:14/24 1:42/21

**who [8]** 1:2/18 1:2/22 1:12/19 1:15/6 1:17/2 1:32/10 1:44/15 1:56/2

**Who's [1]** 1:2/19

**whole [6]** 1:32/1 1:37/24 1:41/18 1:51/14 1:52/16 1:56/4

**wholly [1]** 1:50/22

**why [21]** 1:3/15 1:14/19 1:20/6 1:23/16 1:23/17 1:23/19 1:28/18 1:30/20 1:32/15 1:36/16

**W**

**why... [11]** 1:36/18 1:41/21 1:48/15 1:51/22 1:55/11 1:55/14 1:56/4 1:56/16 1:56/21 1:58/14 1:58/16
**Widener [1]** 1:8/18
**will [11]** 1:2/22 1:7/20 1:12/7 1:43/23 1:46/9 1:46/15 1:46/22 1:49/22 1:50/4 1:50/9 1:54/21
**Williams [2]** 1:21/20 1:21/20
**Williamson [9]** 1:4/17 1:5/5 1:12/21 1:15/10 1:16/23 1:21/22 1:21/23 1:25/6 1:28/9
**willing [1]** 1:12/24
**Wilmington [2]** 1:1/14 1:9/3
**win [1]** 1:47/4
**winning [1]** 1:40/8
**wins [1]** 1:47/22
**wish [1]** 1:29/16
**withdraw [1]** 1:42/18
**within [1]** 1:46/3
**without [4]** 1:5/11 1:14/25 1:18/25 1:21/8
**witness [2]** 1:8/8 1:26/15
**won [2]** 1:39/4 1:39/10
**won't [2]** 1:11/20 1:47/3
**word [2]** 1:18/6 1:57/24
**words [7]** 1:20/5 1:21/12 1:21/15 1:25/15 1:29/13 1:39/14 1:46/21
**work [3]** 1:8/16 1:9/6 1:10/16
**worked [1]** 1:8/25
**working [1]** 1:9/1
**worth [2]** 1:4/12 1:7/11
**would [53]** 1:3/8 1:3/10 1:4/12 1:5/2 1:7/17 1:8/2 1:10/7 1:13/7 1:15/21 1:22/14 1:23/11 1:24/14 1:26/6 1:27/18 1:27/22 1:29/5 1:29/9 1:29/10 1:31/10 1:31/18 1:31/20 1:31/23 1:31/24 1:31/25 1:33/6 1:33/7 1:33/9 1:34/2 1:34/3 1:34/3 1:34/6 1:39/16 1:40/1 1:40/19 1:41/9 1:43/10 1:43/11 1:44/24 1:45/22 1:46/12 1:47/3 1:47/8 1:48/24 1:50/13 1:51/1 1:51/19 1:51/19

1:54/24 1:54/25 1:55/13 1:56/16 1:58/12 1:58/23
**wouldn't [9]** 1:6/18 1:22/13 1:22/14 1:23/24 1:41/8 1:44/23 1:51/9 1:51/19 1:55/13
**write [2]** 1:3/2 1:36/11
**writing [2]** 1:8/19 1:36/14
**written [1]** 1:52/21
**wrong [1]** 1:43/2

**X**

**X [1]** 1:1/3

**Y**

**yeah [18]** 1:4/7 1:10/8 1:11/16 1:11/22 1:13/23 1:13/25 1:19/20 1:19/20 1:19/21 1:20/9 1:21/4 1:23/7 1:39/7 1:39/16 1:41/21 1:53/6 1:57/11 1:57/13
**year [2]** 1:8/19 1:8/22
**years [6]** 1:8/21 1:9/3 1:29/2 1:33/25 1:44/3 1:48/7
**Yep [2]** 1:20/2 1:22/24
**yes [37]** 1:2/16 1:5/25 1:7/3 1:9/23 1:10/12 1:10/15 1:13/1 1:13/21 1:14/2 1:16/11 1:17/14 1:18/17 1:20/23 1:21/14 1:21/17 1:21/17 1:22/2 1:23/6 1:23/11 1:23/12 1:24/25 1:26/1 1:28/4 1:28/4 1:28/7 1:28/25 1:30/16 1:30/18 1:31/4 1:36/13 1:41/14 1:44/1 1:46/20 1:50/13 1:50/20 1:54/4 1:57/25
**yet [5]** 1:3/25 1:4/19 1:20/17 1:25/21 1:51/5
**you [262]**
**you'd [1]** 1:51/1
**you're [30]** 1:3/3 1:3/4 1:3/25 1:5/23 1:6/1 1:6/14 1:6/17 1:13/11 1:14/1 1:19/5 1:20/19 1:21/11 1:22/18 1:23/4 1:27/21 1:28/19 1:32/8 1:41/12 1:41/19 1:43/2 1:43/19 1:43/21 1:46/9 1:47/19 1:48/22 1:48/25 1:50/16 1:50/18 1:53/14 1:56/19
**you've [6]** 1:3/1 1:28/21 1:29/23 1:37/14 1:43/13 1:53/13
**your [89]**

**Z**

**Z [1]** 1:8/7
**Z-A-H-R-A-L-D-D-I-N [1]** 1:8/7
**ZAHRALDDIN [11]** 1:1/3 1:8/6 1:8/8 1:8/14 1:9/20 1:10/21 1:11/1 1:12/7 1:16/15 1:23/2 1:31/16